**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **YS GM MARFIN II LLC et al.,** | |
| Plaintiffs, | Case No.: 1:20-cv-03320-PGG |
| v. | Hon. Paul G. Gardephe |
| **FOUR WOOD CAPITAL ADVISORS, LLC et al.,** | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(2), 12(b)(6), AND 9(b) AND *FORUM NON CONVENIENS***

# Table of Contents

**Page**

Table of Authorities ......................................................................................................... iv

I.     INTRODUCTION ................................................................................................... 1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ......................... 2

    A.     YieldStreet and Four Wood's relationship is based entirely on the IMA. ............. 2

    B.     After Four Wood sourced loans for YieldStreet pursuant to the IMA,
           YieldStreet extended loans to North Star, North Star defaulted, and North
           Star allegedly engaged in fraud ............................................................................ 4

III.   STANDARD OF REVIEW ..................................................................................... 6

    A.     Fed. R. Civ. P. 12(b)(1) ......................................................................................... 6

    B.     Fed. R. Civ. P. 12(b)(2) ......................................................................................... 7

    C.     Forum Non Conveniens .......................................................................................... 7

    D.     Fed. R. Civ. P. 12(b)(6) ......................................................................................... 8

    E.     Fed. R. Civ. P. 9(b) ................................................................................................ 9

IV.    ARGUMENT .......................................................................................................... 9

    A.     This Case Is Outside the Court's Admiralty & Maritime Subject Matter
           Jurisdiction ............................................................................................................ 9

          1.     The IMA is not a maritime contract because its subject matter is
                investment management services as opposed to maritime
                commerce. ................................................................................................. 10

          2.     Contracts preliminary to maritime contracts are not maritime
                contracts. ................................................................................................... 13

          3.     This Court also lacks maritime tort jurisdiction over the instant
                dispute. ..................................................................................................... 17

    B.     The Claims Against Simmons Should Be Dismissed for Lack of Personal
           Jurisdiction .......................................................................................................... 18

          1.     This Court does not have specific jurisdiction over Simmons. ................. 19

          2.     Due process considerations also do not allow the exercise of
                personal jurisdiction over Simmons ........................................................ 24

    C.     The YMF-SPE's Claims Should Be Dismissed for Forum Non Conveniens
           Because the Applicable Forum Selection Clause Sets Venue in New York
           State Courts ......................................................................................................... 27

          1.     The applicable forum selection clause sets venue in New York
                 State courts. .............................................................................................. 27

          2.     The applicable forum selection clause is valid and enforceable. .............. 27

    D.     The Complaint Fails to Plausibly Allege a Claim for Relief ............................... 28

      1.     The Complaint fails to state a claim for breach of contract. ...................... 29

      2.     The Complaint fails to plausibly allege any tort claims. .......................... 36

      3.     The Complaint fails to plausibly allege claims against Baffico and Simmons in their individual and personal capacities................................ 47

V.  CONCLUSION ...................................................................................................... 50

# Table of Authorities

Page(s)

## Cases

*7 W. 57th St. Realty Co., LLC v. CitiGroup, Inc.*,
    No. 13 Civ. 981(PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015)...................................25

*The Ada*, 250 F. 194 (2d Cir. 1918) .................................................................................................12

*Adamski v. Lama*,
    869 N.Y.S.2d 256 (3d Dep't 2008) ........................................................................................41

*Advantage Sky Shipping LLC v. Icon Equip. & Corp. Infrastructure Fund Fourteen
    Liquidating Trust*, 427 F. Supp. 3d 501 (S.D.N.Y. 2019) ........................................14

*Aggelikos Prostatis Corp. v. Shun Da Shipping Grp. Ltd.*,
    646 F. Supp. 2d 330 (S.D.N.Y. 2009)....................................................................................14

*Am. Protein Corp. v. AB Volvo*,
    844 F.2d 56 (2d Cir. 1988).....................................................................................................39

*AMBAC Assur. Corp. v. U.S. Bank Nat'l Ass'n*,
    328 F. Supp. 3d 141 (S.D.N.Y. 2018)....................................................................................38

*Anchor v. Novartis Grimsby Ltd.*,
    No. 05-CV-7S, 2006 WL 3419846 (W.D.N.Y. Nov. 27, 2006)............................................25

*Aquiline Capital Partners LLC v. Finarch LLC*,
    861 F. Supp. 2d 378 (S.D.N.Y. 2012)....................................................................................20

*Arnold Chevrolet LLC v. Tribune Co.*,
    No. 04-CV-3097 (DRH)(WDW), 2007 WL 2743490
    (S.D.N.Y. Sept. 17, 2007)................................................................................................38, 41

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
    480 U.S. 102 (1987)...........................................................................................................25, 26

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................8

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
    571 U.S. 49 (2013)...............................................................................................................8, 28

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd.*,
    968 F.2d 196 (2d Cir. 1992)....................................................................................................10

*Automated Transaction LLC v. N.Y. Cmty. Bank*,
  No. 12-CV-3070(JS)(ARL), 2013 WL 992423 (E.D.N.Y. Mar. 13, 2013)............................48

*Axiom Inv. Advisors, LLC v. Deutsche Bank AG*,
  234 F. Supp. 3d 526 (S.D.N.Y. 2017).......................................................................................8

*Ball v. New York City Council*,
  No. 17-cv-4828 (JMF), 2018 WL 4625625 (S.D.N.Y. Sept. 26, 2018) ..................................48

*Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*,
  No. 03 Civ. 0015(RWS), 2006 WL 1997628 (S.D.N.Y. July 18, 2006) ................................39

*Basis PAC-Rim Opportunity Fund (Master) v. TCW Asset Mgmt. Co.*,
  149 A.D.3d 146 (1st Dep't 2017)............................................................................................45

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................................32

*Bell v. Carey*,
  No. 18-CV-2846 (PAE) (OTW), 2020 WL 3578150 (S.D.N.Y. July 1, 2020) ......................49

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007).....................................................................................................24

*BNP Paribas v. Bank of N.Y. Tr. Co., N.A.*,
  No. 11 Civ. 350 (PGG), 2012 WL 13059498 (S.D.N.Y. Mar. 28, 2012).........................36, 37

*Boyd, Weir & Sewell, Inc. v. Fritzen-Halcyon Lijn, Inc.*,
  709 F. Supp. 77 (S.D.N.Y. 1989) ......................................................................................14, 15

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).................................................................................................................26

*Caraballo v. United States*,
  830 F.2d 19 (2d Cir. 1987).......................................................................................................42

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016).........................................................................................................7

*Carter-Green-Redd, Inc. v. USS Cabot/Dedalo Museum Found.*,
  756 F. Supp. 276 (E.D. La. 1991) .....................................................................................14, 15

*Castleton Commodities Shipping Co. Pte v. HSL Shipping & Logistics NA, Inc.*,
  No. 16-6619, 2016 WL 4419137 (E.D. La. Aug. 19, 2016) ...................................................12

*Cherny v. Emigrant Bank*,
  604 F. Supp. 2d 605 (S.D.N.Y. 2009)......................................................................................43

*Childers v. New York & Presbyterian Hosp.*,
   36 F. Supp. 3d 292 (S.D.N.Y. 2014)..............................................................24, 30

*Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*,
   70 N.Y.2d 382 (1987) ...................................................................................37, 38

*Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*,
   527 F.2d 966 (2d Cir. 1975).................................................................................14

*Contant v. Bank of Am. Corp.*,
   385 F. Supp. 3d 284 (S.D.N.Y. 2019)....................................................................7

*Cortec Industries, Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991)....................................................................................8

*Coughlan v. Jachney*,
   473 F. Supp. 3d 166 (E.D.N.Y. 2020)..................................................................46

*D'Amico Dry, Ltd. v. Primera Mar. (Hellas), Ltd.*,
   886 F.3d 216 (2d Cir. 2018)................................................................................17

*DBT GmbH v. J.L. Min. Co.*,
   544 F. Supp. 2d 364 (S.D.N.Y. 2008)..................................................................33

*De Sole v. Knoedler Gallary, LLC*,
   974 F. Supp. 2d 274 (S.D.N.Y. 2013)..................................................................48

*DeBlasio v. Merrill Lynch & Co., Inc.*,
   No. 07 Civ 318(RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ...............40, 41

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)..................................................................................8

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009) .............................................................................27

*Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*,
   30 N.Y. 3d 704 (2018) ........................................................................................36

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
   228 F.R.D. 508 (S.D.N.Y. 2005) .........................................................................49

*El Fenix de Puerto Rico v. Serrano Gutierrez*,
   No. 90-1382 (JP), 1991 U.S. Dist. LEXIS 20857 (D.P.R. Sept. 9, 1991) ...............12

*Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011)..............................................................38, 44

*F.S. Royster Guano Co. v. W.E. Hedger Co.*,
  48 F.2d 86 (2d Cir. 1931) .................................................................................... 13

*FDIC v. Murex LLC*,
  500 F. Supp. 3d 76 (S.D.N.Y. 2020) ..................................................................... 45

*Fink v. Time Warner Cable*,
  810 F. Supp. 2d 633 (S.D.N.Y. 2011) ................................................................... 30

*Fire & Police Pension Ass'n v. Bank of Montreal*,
  368 F. Supp. 3d 681 (S.D.N.Y. 2019) ..................................................................... 7

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*,
  822 F.3d 620 (2d Cir. 2016) .................................................................................. 17

*Folksamerica Reins. Co. v. Clean Water of N.Y., Inc.*,
  413 F.3d 307 (2d Cir. 2005) .................................................................................. 17

*FPP, LLC v. Xaxis US, LLC*,
  764 Fed. Appx. 92 (2d Cir. 2019) ......................................................................... 44

*FSP, Inc. v. Societe Generale*,
  No. 02CV4786GBD, 2005 WL 475986 (S.D.N.Y. Feb. 28, 2005) ......................... 39

*Gaidon v. Guardian Life Ins. Co. of Am.*,
  679 N.Y.S.2d 611 (1st Dep't 1998) ....................................................................... 40

*Gao v. JPMorgan Chase & Co.*,
  No. 14 Civ. 4281(PAC), 2015 WL 3606308 (S.D.N.Y. June 9, 2015) ................... 30

*GMA Accessories, Inc. v. ePartners Inc.*,
  No. 07 Civ. 8414(LAK), 2008 WL 781188 (S.D.N.Y. Mar. 19, 2008) ................... 43

*Goodyear Dunlop Tires Operations, S.A. v Brown*,
  564 US 915 (2011) ................................................................................................ 19

*Gray v. Denny's Corp.*,
  535 Fed. Appx. 14 (2d Cir. 2013) ......................................................................... 42

*Great Western Ins. Co. v. Graham*,
  No. 18-CV-6249 (VSB), 2020 WL 3415026 (S.D.N.Y. June 22, 2020) ................. 38

*Greenberg v. Chrust*,
  198 F. Supp. 2d 578 (S.D.N.Y. 2002) ................................................................... 39

*Gusmao v. GMT Group, Inc.*,
  No. 06 Civ. 5113(GEL), 2008 WL 2980039 (S.D.N.Y. Aug. 1, 2008) ................... 40

*Hall v. Bed Bath & Beyond, Inc.*,
    705 F.3d 1357 (Fed. Cir. 2013)................................................................48

*Harley Mullion & Co. Ltd. v. Caverton Marine Ltd.*,
    No. 08-cv-5435 (BSJ), 2008 WL 4905460 (S.D.N.Y. Aug. 7, 2008) .....................10

*Henneberry v. Sumitomo Corp. of Am.*,
    532 F. Supp. 2d 523 (S.D.N.Y. 2007)........................................................39

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*,
    227 F.3d 8 (2d Cir. 2000)......................................................................38

*In re Marsh & McLennan Cos. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006)........................................................41

*In re Parmalat Sec. Litig.*,
    479 F. Supp. 2d 332 (S.D.N.Y. 2007).....................................................38, 41

*Int'l Customs Assocs. v. Ford Motor Co.*,
    893 F. Supp. 1251 (S.D.N.Y. 1995), *aff'd*, 201 F.3d 431 (2d Cir. 1999) ...............20

*Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*,
    675 F. Supp. 146 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 388 (2d Cir. 1989) ............10, 12

*Ithaca Capital Investments I S.A. v. Trump Pan. Hotel Mgmt. LLC*,
    450 F. Supp. 3d 358 (S.D.N.Y. 2020)........................................................46

*J.A.R., Inc. v. M/V Lady Lucille*,
    963 F.2d 96 (5th Cir. 1992) ...................................................................12

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
    513 U.S. 527 (1995)............................................................................18

*K. Bell & Assocs. v. Lloyd's Underwriters*,
    97 F.3d 632 (2d Cir. 1996)....................................................................34

*Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*,
    952 F. Supp. 2d 542 (S.D.N.Y. 2013)........................................................49

*Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*,
    561 U.S. 89 (2010)............................................................................17

*Koninklijke Philips Elecs. N.V. v. ADS Group*,
    694 F. Supp. 2d 246 (S.D.N.Y. 2010)....................................................48, 49

*Kottler v. Deutsche Bank AG*,
    607 F. Supp. 2d 447 (S.D.N.Y. 2009).....................................................9, 40

*Kreatsoulas v. Freights of the Levant Pride*,
    838 F. Supp. 147 (S.D.N.Y. 1993) ...........................................................................14, 15

*Kreutter v. McFadden Oil Corp.*,
    71 N.Y.2d 460 (1988) ...................................................................................................22

*Laub v. Faessel*,
    297 A.D.2d 28 (1st Dep't 2002) ..................................................................................41

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010)....................................................................................33, 34

*Levy v. Bessemer Trust Co., N.A.*,
    No. 97 Civ. 1785(JFK), 1997 WL 431079 (S.D.N.Y. July 30, 1997) ......................31

*LNC Invs., Inc. v. First Fid. Bank, N.A.*,
    173 F. 454 (2d Cir. 1999)..............................................................................................41

*Lynnhaven Dolphin Corp. v. E.L.O. Enters., Inc.*,
    776 F.2d 538 (5th Cir. 1985) ........................................................................................12

*Madison Capital Co., LLC v. Alasia, LLC*,
    615 F. Supp. 2d 233 (S.D.N.Y. 2009)..........................................................................39

*Maranga v. McDonald & T. Corp.*,
    8 A.D.3d 351 (2d Dep't. 2004)......................................................................................47

*Maritima Petroleo E Engenharia Ltda. v. Ocean Rig 1 AS*,
    78 F. Supp. 2d 162 (S.D.N.Y. 1999)............................................................................15

*McGowan v. Smith*,
    52 N.Y.2d 268 (1981) ...................................................................................................22

*McKee Elec. Co. v. Rauland-Borg Corp.*,
    20 N.Y.2d 377 (1967) ...................................................................................................20

*Meese v. Miller*,
    79 A.D.2d 237 (4th Dep't 1981) ...................................................................................47

*Mindspirit, LLC v. Evalueserve Ltd.*,
    No. 15 Civ. 6065 (PGG), 2016 WL 11707410 (S.D.N.Y. Sep. 26, 2016) ..................37

*Nat'l Ctr. for Crisis Mgmt. v. Lerner*,
    91 A.D.3d 920 (2d Dep't 2012) ....................................................................................47

*Nelson v. Adams USA, Inc.*,
    529 U.S. 460 (2000).......................................................................................................49

*Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*,
   543 U.S. 14 (2004) ................................................................................10, 16, 17

*Northern Star S.S. Co. v. Kansas Milling Co.*,
   75 F. Supp. 534 (S.D.N.Y. 1947) ...........................................................14

*NRW, Inc. v. Bindra*,
   775 Fed. Appx. 22 (2d Cir. 2019) ...........................................................44

*OP Solutions, Inc. v. Crowell & Moring, LLP*,
   900 N.Y.S.2d 48 (1st Dep't 2010) ...........................................................36

*Parker v. Columbia Pictures Indus.*,
   204 F.3d 326 (2d Cir. 2000) ...................................................................32

*People's Ferry Co. v. Beers*,
   61 U.S. 393 (1857) ................................................................................12

*Phillips v. Audio Active, Ltd.*,
   494 F.3d 378 (2d Cir. 2007) ...................................................................28

*Port Auth. of N.Y. & N.J. v. Arcadian Corp.*,
   189 F.3d 305 (3d Cir. 1999) ...................................................................42

*PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*,
   No. 99 Civ. 3794(BSJ), 2003 WL 22118977 (S.D.N.Y. Sept. 11, 2003) ...............43

*Pullman v. Alpha Media Pub., Inc.*,
   No. 12-CV-1924 (PAC)(SN), 2013 WL 1290409 (S.D.N.Y. Jan. 11, 2013), *adopted*,
   2013 WL 1286144 (S.D.N.Y. Mar. 28, 2013), *aff'd*, 624 Fed. Appx. 774 (2d Cir.
   2015) ...................................................................................................32

*Readco, Inc. v. Marine Midland Bank*,
   81 F.3d 295 (2d Cir. 1996) ...................................................................34

*Robin Bay Assocs., LLC v. Merrill Lynch & Co.*,
   No. 07 Civ. 376(JMB), 2008 WL 2275902 (S.D.N.Y. June 3, 2008) ....................43

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993) ...................................................................28

*Rogen v. Memry Corp.*,
   886 F. Supp. 393 (S.D.N.Y. 1995) ...........................................................27

*Rosenblatt v. Coutts & Co. AG*,
   750 Fed. Appx. 7 (2d Cir. 2018) ...........................................................20

*Salameno v. Rawlings*,
  19 Civ. 4442 (PGG) (BCM), 2021 WL 1085521 (S.D.N.Y. Mar. 22, 2021) ........................45

*Salvani v. ADVFN PLC*,
  50 F. Supp. 3d 459 (S.D.N.Y. 2014).............................................................................7

*Schultz v. Safra Nat'l Bank*,
  377 Fed. Appx. 101 (2d Cir. 2010)..............................................................................19

*Sea Trade Mar. Corp. v. Coutsodontis*,
  No. 09 Civ 488(BSJ)(HBP), 2012 WL 3594288 (S.D.N.Y. Aug. 16, 2012).........................14

*Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*,
  No. 18-cv-5134 (JSR), 2020 WL 948853 (S.D.N.Y. Feb. 27, 2020) ..............................31, 32

*Shipping Fin. Servs. Corp. v. Drakos*,
  140 F.3d 129 (2d Cir. 1998)..................................................................................15, 16

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
  549 U.S. 422 (2007)..................................................................................................7

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
  450 F.3d 100 (2d Cir. 2006).......................................................................................23

*Spinelli v. Nat'l Football League*,
  903 F.3d 185 (2d Cir. 2018).......................................................................................44

*Sykes v. RFD Third Ave. 1 Assoc., LLC*,
  884 N.Y.S.2d 745 (1st Dep't 2009)..............................................................................39

*Tankship Int'l, LLC v. El Paso Merch. Energy-Petroleum Co.*,
  428 F. Supp. 2d 93 (D. Conn. 2006)........................................................................15, 16

*Taylor v. Weir*,
  110 F. 1005 (D. Or. 1901).......................................................................................14, 15

*Tecku v. YieldStreet Inc.*,
  No. 1:20-cv-07327 (S.D.N.Y).....................................................................................8, 9

*The Thames*, 10 F. 848 (S.D.N.Y. 1881) ...................................................................13, 14, 15

*Three Five Compounds, Inc. v. Scram Techs., Inc.*,
  No. 11 Civ. 1616(RJH), 2011 WL 5838697 (S.D.N.Y. Nov. 21, 2011) ....................21, 22, 23

*Torices v. The Winged Racer*,
  24 F. Cas. 62 (S.D.N.Y. 1858)..................................................................................14, 15

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
  487 F.3d 89 (2d Cir. 2007).......................................................................................34, 35

*Trisvan v. Heyman*,
    305 F. Supp. 3d 381 (E.D.N.Y. 2018) ...................................................................48

*Ujvari v. 1stdibs.com, Inc.*,
    No. 16 Civ. 2216 (PGG), 2017 WL 4082309 (S.D.N.Y. Sept. 13, 2017) ..............................28

*Unicorn Bulk Traders Ltd. v. Fortune Mar. Enters., Inc.*,
    No. 08 Civ. 9710(PGG), 2009 WL 125751 (S.D.N.Y. Jan. 20, 2009) .........................12, 13

*Value Time, Inc. v. Windsor Toys, Inc.*,
    709 F. Supp. 436 (S.D.N.Y. 1989) .........................................................................47

*Verragio, Ltd. v. Malakan Diamond Co.*,
    No. 16 Civ. 4634 (CM), 2016 WL 6561384 (S.D.N.Y. Oct. 20, 2016) ..................................19

*Vrita Marine Co. v. Seagulf Trading LLC*,
    572 F. Supp. 2d 411 (S.D.N.Y. 2008).....................................................................14

*Walden v. Fiore*,
    571 U.S. 277 (2014)..........................................................................................24, 25

*Waldman v. PLO*,
    835 F.3d 317 (2d Cir. 2016).....................................................................................24

*Wall v. CSX Transp., Inc.*,
    471 F.3d 410 (2d Cir. 2006).....................................................................................44

*WiAV Solutions Inc. v. HTC Corp.*,
    No. 19 Civ. 4978 (PGG), 2020 WL 3547744 (S.D.N.Y. June 30, 2020) ..............................29

*Wiest Int'l, GMBH v. Zobel*,
    No. 17-CV-6722 (JFB) (GRB), 2018 WL 736010 (E.D.N.Y. Feb. 6, 2018) ..................27, 28

*Wilkins v. Commercial Inv. Trust Corp.*,
    153 F.3d 1273 (11th Cir. 1998) ..............................................................................12

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd*, 65 Fed. Appx. 736 (2d Cir. 2003)....................30

**Statutes**

28 U.S.C. § 1333.........................................................................................................9, 10

28 U.S.C. § 1367.............................................................................................................18

**Rules**

NY CPLR § 302..................................................................................................19, 20, 24

Fed. R. Civ. P. 9(b) ................................................................................................9, 41, 45

Fed. R. Civ. P. 12(b)(1)..............................................................................................1, 6

Fed. R. Civ. P. 12(b)(2)...........................................................................................1, 7, 24

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 8

**Other Authorities**

2 *Am. Jur. 2d Admiralty* § 60.....................................................................................12

1 *Benedict on Admiralty* § 183....................................................................................13

1 *Benedict on Admiralty* § 186....................................................................................12

8 *Benedict on Admiralty* § 2.04..............................................................................10, 11

U.S. Const. Art. III § 2, Cl. 1 .........................................................................................9

Vihay Shekar Jha, *Understanding the Operation of "AIS" in International Maritime Transactions*, 51 J. Mar. L. & Com. 65 (2020) ..........................................................5

Plaintiffs respectfully submit this Memorandum of Law in support of their motion to dismiss the Amended Complaint ("Complaint"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 9(b) and *forum non conveniens.* Defendants are FOUR WOOD CAPITAL ADVISORS, LLC ("FWCA") and FOUR WOOD CAPITAL PARTNERS, LLC ("FWCP") (collectively, "Four Wood"), STEVEN BAFFICO ("Baffico"), and ANDREW SIMMONS ("Simmons"). Plaintiffs are YS GM MARFIN II LLC, YS GM MF VI LLC, YS GM MF VII LLC, YS GM MF VIII LLC, YS GM MF IX LLC, YS GM MF X LLC (collectively, "YMF-SPE"), YIELDSTREET MARINE FINANCE, LLC ("YMF"), and YIELDSTREET MANAGEMENT, LLC (collectively with YMF-SPE and YMF, "YieldStreet"). The alleged claims fail for want of federal subject matter jurisdiction; lack of personal jurisdiction over Defendant Simmons; *forum non conveniens*; failure to state a claim as to certain Defendants under New York law; and failure to plead fraud with sufficient particularity.

## I.    **INTRODUCTION**

YieldStreet's Complaint was improperly filed in federal court and fails to state legally meritorious claims. This Court lacks subject matter jurisdiction as no maritime contract or tort is at issue. This Court lacks personal jurisdiction over United Kingdom citizen and Republic of Cyprus ("Cyprus") domiciliary Simmons. The Investment Management Agreement ("IMA") underlying YieldStreet and Four Wood's relationship vests exclusive venue for the YMF-SPE's claims in the courts of the State of New York, in the County of New York. *See* Isquith Decl.[1] Ex. 1 (IMA) at Ex. C (Joinder Supplement) § 4. The Complaint fails to state a breach of contract claim, or any one of the several tort claims, or fails to plead fraud. YieldStreet fails plausibly to plead the

---

[1] Declaration of Fred T. Isquith Sr., dated September 17, 2021 and filed herewith ("Isquith Decl.").

individual liability of Baffico or Simmons or otherwise allege facts that would support disregarding the corporate form.

These are fatal flaws. There is no merit to the attempt by YieldStreet to shift to Four Wood the blame for its own investment choices and management decisions plus the alleged fraud of YieldStreet's borrowers, North Star Maritime Holdings Ltd. ("North Star"). The Complaint should be dismissed with prejudice.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.   YieldStreet and Four Wood's relationship is based entirely on the IMA.

YieldStreet is a New York City based corporation that offers investments to retail investors that purportedly will result in higher yields than other less speculative products. *See* Isquith Decl. Ex. 3 (Buss Decl.[2]) ¶¶ 6-7. Four Wood is a small boutique firm which offers certain investment services – including introducing potential lenders and borrowers for financing the purchase of ships.

On April 18, 2018, FWCA, FWCP, and YMF executed the IMA. The core mandate of the IMA is unequivocal: "Investor's [ i.e. YMF's] account shall be a non-discretionary account in which Investor shall retain all rights, title, control, and management final authority with respect to all investments in the Investor's Account. Manager [FWCA] shall originate, perform due diligence, and under the direction, guidance and approval of the Investor, manage and service the investments which comprise Investor's Account in accordance with the Servicing Standards …." IMA at 1. The IMA provides that it "is governed by and interpreted in accordance with the law of the State of New York without giving effect to principles of conflicts of law." *Id.* at ¶ 19.

---

[2] Decl. of Charles Tilden Storrs Buss, *In re: YS GM MARFIN II, LLC*, No. 1:20-mc-00182 (S.D.N.Y. Apr. 30, 2020), ECF No. 3.

The scope of Four Wood's responsibilities is delineated on page one of the IMA. The Parties agreed that Four Wood, with YieldStreet's authorization, "will originate and perform due diligence on a proposed borrower, asset and collateral and develop a proposed transaction structure … [and] will negotiate the terms and conditions with prospective borrowers." *Id.* at ¶¶ c, d. If YieldStreet in its discretion elected to make loans to a prospective borrower, FWCA was to "monitor loan repayments, the underlying security and the compliance of the documented terms and covenants by the borrowers, taking action as (or if) directed by the Investor in the event of a breach … in accordance with the Servicing Standards unless otherwise directed by Investor." *Id.* at ¶ f.

The IMA explicitly establishes the Servicing Standard. Four Wood was to "monitor, collect, administer and service each loan with reasonable care using that degree of skill and attention that is (i) deemed commercially reasonable in the industry, and (ii) no less than the degree of skill and attention it uses in servicing and administering similar loans for its own account … or for the account of other investors and in all cases in accordance with applicable laws …." *Id.* at ¶ 10.

Pursuant to the IMA, Four Wood within:

two (2) business days after **receipt of notice thereof or actual knowledge of an occurrence,** as applicable, provide Investor with: (i) copies of all financial statements or financial information received by Manager from borrower pursuant to each loan agreement or otherwise but **without any representation or warranty by Manager as to the accuracy or completeness thereof**; (ii) **notice of** the occurrence of an "Event of Default" (as such term is defined in each loan agreement); (iii) **notice of** any event or condition [that] could be reasonably likely to have a material adverse effect on the ability of the borrower to repay a loan by the maturity date then in effect; and (iv) any other material notices, reporting or documents received by Manager in connection with the loans.

*Id.* at ¶ 11 (emphases added). Nothing in the Complaint suggests that Four Wood withheld any information or documentation from YieldStreet – instead, the Complaint alleges Four Wood fulfilled their contractual obligations by passing information from North Star to YieldStreet.

The IMA further states that Four Wood is not a guarantor of YieldStreet's decision to engage in highly speculative lending activity:

> Investor acknowledges that Manager cannot and does not guarantee the future performance of Investor's Account or any specific level of performance, the success of any investment recommendations or strategy that Manager may use, or the success of Manager's overall management of Investor's Account.

*Id.* at ¶ 9.

Baffico is the managing officer of both FWCA and FWCP. Simmons is a citizen of the United Kingdom and domiciliary of Cyprus, and he is the Chief Executive Officer of non-party Maritime Finance Advisors IKE ("MFA"), a Greek private company, and the Chief Executive Office of MMA Mediterranean Maritime Advisors Ltd. ("MMA"), a Cyprus limited company. Simmons Decl.[3] ¶¶ 2-3. At no time whatsoever was Simmons an employee or officer of Four Wood, *id.* ¶ 5; and neither he nor his companies are parties to the IMA. *Id.* ¶ 6; *see generally* IMA. Nothing in the Complaint suggests that Baffico or Simmons acted in any way other than in their official capacity within their respective companies that would justify disregarding the corporate form and subject Baffico and Simmons to individual liability.

**B.    After Four Wood sourced loans for YieldStreet pursuant to the IMA, YieldStreet extended loans to North Star, North Star defaulted, and North Star allegedly engaged in fraud.**

Between June 2018 and September 2019, the YMF-SPE issued six loan facilities for at least $89.2 million dollars to North Star (the "Loans"). Compl. ¶ 53. The Defendants were neither parties nor signatories to any of the Loans. Each Loan was secured for YieldStreet by, *inter alia*,

---

[3] Decl. of Andrew Simmons, dated September 17, 2021 and filed herewith ("Simmons Decl.").

ship mortgages, corporate and personal guarantees by North Star and the Lakhanis (the family which owned and operated North Star), the assignments of sales and insurance proceeds, and pledges of shares. *See* Buss Decl. ¶ 22. Each loan facility was memorialized by a separate "Schedule B-1" to the IMA. Each Schedule B-1 sets forth fees for the loans, and of particular importance, pursuant to each addendum, **Plaintiff YMF signed on as a "Manager" (as defined in the IMA) thereby undertaking all of the responsibilities of "Manager" and half of the fees.**[4] YieldStreet managed the Loans and obtained additional management fees from the YieldStreet funds (and ultimately retail investor customers). *See* Isquith Decl. Ex. 2 (Schedule B-1s).

Sometime in September 2019, North Star became late in paying the interest and principal amounts due under some of the Loans. *See* Buss Decl. at ¶¶ 37-38; *see also* Isquith Decl. Ex 4.[5] In subsequent months, Four Wood **and** YieldStreet "were regularly in contact" with North Star: during that time YieldStreet exercised its discretion under the IMA and "agree[d] to grant multiple extensions on the payment of both interest and principal" in response to "different excuses" provided by the borrowers. Buss Decl. at ¶¶ 39-41. In making these decisions, YieldStreet had the exact same insight into ship "tracking" as Four Wood as both parties utilized the publicly available third-party vessel tracking services that in turn relied on vessel based automatic identification system ("AIS") transponders that can be turned on or off by a ship's crew as they see fit.[6]

---

[4] These are the very duties YieldStreet accuses Four Wood of breaching.

[5] *YS GM MARFIN II LLC et al. v. Muhammad Ali Lakhani et al.*, [2020] EWHC 2629 (Comm). The High Court opinion cited here relies heavily on submissions and sworn statements by YieldStreet including a second affidavit by Buss which seems to tell a different story than the one YieldStreet alleges in the Complaint. YieldStreet has declined to provide copies of this material on a voluntary basis. If the Court concludes that those papers would be helpful to the Court in ruling on this motion, we respectfully suggest that the Court require YieldStreet to produce its own affidavits and submissions in the English proceeding.

[6] *See* Vihay Shekar Jha, *Understanding the Operation of "AIS" in International Maritime*

The payment problems did not subside through the first quarter of 2020. North Star "dragged the negotiations for extensions through weeks by promising to provide the required documents and to make partial payments." Buss Decl. at ¶ 42. The Parties began questioning the geographic locations of vessels serving as security for certain Loans in or around January 2020, which had been allegedly obscured because the AIS transponders on the ships had been switched off. *Id*. at ¶¶ 45, 47. A joint investigation by YieldStreet and Four Wood revealed that North Star had engaged in an alleged elaborate fraud, which included (i) the falsification of financial statements; (ii) various misrepresentations regarding the registration of the vessels and mortgages; (iii) misrepresentations regarding the existence of payments between North Star and the third-party lessee of the Wu Xian (one of the several vessels which North Star purchased using a loan obtained from YieldStreet); and (iv) the scrapping and sale of the vessels without notice to YieldStreet despite YieldStreet's security interests. *See id.* at ¶¶ 30-70.

YieldStreet's troubles stem from their own investment decisions and the alleged North Star fraud. Yet, in an aggressive attempt to shift blame from themselves, YieldStreet filed this action in April 2020 followed by the Amended Complaint in September 2020.

## III.   STANDARD OF REVIEW

### A.     Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. "The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the

---

*Transactions*, 51 J. Mar. L. & Com. 65, 66 (2020).

evidence, that jurisdiction exists."[7] The district court must "determine whether the [p]leading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'"[8]

### B.    Fed. R. Civ. P. 12(b)(2)

On a Rule 12(b)(2) motion to dismiss, "the plaintiff bears the burden of establishing personal jurisdiction over the defendant."[9] The plaintiff must "make a *prima facie* showing that personal jurisdiction exists by pleading legally sufficient allegations of jurisdiction."[10] Sufficient allegations "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."[11] Personal jurisdiction over Simmons cannot attach; he is a citizen of the United Kingdom, domiciliary of Cyprus, and not bound by the IMA. Plaintiffs merely allege he has contacts with the State of New York based on Plaintiffs' location and Four Wood's former offices in lower Manhattan.

### C.    Forum Non Conveniens

"A district court … may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."[12] Under the doctrine of *forum non conveniens*, a forum selection clause must be "given controlling weight in all but the most exceptional cases," and the plaintiff proposing an alternative venue bears the burden in opposing

---

[7] *Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 466 (S.D.N.Y. 2014) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010)), *aff'd sub nom. Salvani v. InvestorsHub.com, Inc.*, 628 Fed. Appx. 784 (2d Cir. 2015).

[8] *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)).

[9] *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 290 (S.D.N.Y. 2019).

[10] *Fire & Police Pension Ass'n v. Bank of Montreal*, 368 F. Supp. 3d 681, 692 (S.D.N.Y. 2019).

[11] *Fire & Police Pension*, 368 F. Supp. 3d at 692.

[12] *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007).

the forum for which the parties bargained.[13] The IMA's Joinder Supplement contains a valid and enforceable forum selection clause requiring the YMF-SPE's claims be litigated in New York State courts. Hence, this Court should dismiss the YMF-SPE's claims for *forum non conveniens*.

### D.      Fed. R. Civ. P. 12(b)(6)

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[14] Conclusory allegations are not presumed true and a pleading is deemed conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[15]

Rule 12(b)(6) allows the court to consider documents incorporated by reference in the complaint, such as the IMA, as well as other documents such as those in the record of the courts or which the parties bring to the court's attention.[16]

Where a document is directly relevant to the allegations of the complaint, such as the Buss Declaration, the Court may "consider it where the complaint relies heavily upon its terms and effect."[17] The Court may also rely on matters of public record, such as YieldStreet's submissions in *Tecku v. YieldStreet Inc.*, No. 1:20-cv-07327 (S.D.N.Y), so long as the plaintiffs had notice of such documents.[18] The Buss Declaration provides sharp contrast with the story put forth in the Complaint, including describing the depth and the breadth of the alleged North Star fraud, as well

---

[13] *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 63 (2013); *see also id.* at 66 n. 8.

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[15] *Iqbal*, 556 US at 678-79 (quoting *Twombly*, 550 U.S. at 557).

[16] *Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) ("On a motion to dismiss for breach of contract, courts look ... at the contract itself, which by definition is integral to the complaint." (citation omitted)).

[17] *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation omitted); *see also* Notice of Case Reassignment, *In re: YS GM MARFIN II, LLC*, No. 1:20-mc-00182 (S.D.N.Y. July 2, 2020).

[18] *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

as Four Wood's ready cooperation with Plaintiffs after the fraud was discovered and the steps taken by Four Wood in compliance with their contractual obligations under the IMA. *See, e.g.*, Buss Decl. ¶¶ 45, 49. Similarly, in *Tecku*, pending before Judge Marrero, YieldStreet has stated as a defense that the investment funds which hold the North Star loans have not suffered any losses, making their claim of damages speculative at best. *See* Isquith Decl. Ex. 5 (YieldStreet's Feb. 12, 2021 Letter to Judge Marrrero). The Court should take judicial notice of Plaintiffs' judicial admissions which directly contradict their allegation in the Complaint.

**E.      Fed. R. Civ. P. 9(b)**

Rule 9(b) sets standards for pleading fraud claims and requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[19]

**IV.     ARGUMENT**

**A.      This Case Is Outside the Court's Admiralty & Maritime Subject Matter Jurisdiction**

The only ground for subject matter jurisdiction pled in the Complaint is maritime and admiralty subject matter jurisdiction pursuant to 28 U.S.C. § 1333.[20] However, that basis is completely lacking for the New York legal claims. The IMA is not a "maritime contract." It does not involve vessel operation. The IMA is for the provision of investment management services by

---

[19] *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 462 (S.D.N.Y. 2009) (quoting *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)).

[20] *See* Compl. at ¶ 30; *see also* 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of … [a]ny civil case of admiralty or maritime jurisdiction …."); U.S. Const. Art. III § 2, Cl. 1 ("The judicial Power shall extend … to all Cases of admiralty and maritime Jurisdiction ….").

Four Wood to YieldStreet so that YieldStreet could lend money to third parties (like North Star) so that those third parties could purchase ships. Contracts to purchase ships are not maritime.[21] The IMA is several steps remote from such a non-maritime contract. Plaintiffs allege no maritime torts. Plaintiffs' allegations are based on financial management activities taking place on land. Thus, this Court lacks 28 U.S.C. § 1333 maritime and admiralty subject matter jurisdiction. For this reason alone, the Complaint must be dismissed.

> **1.    The IMA is not a maritime contract because its subject matter is investment management services as opposed to maritime commerce.**

"The jurisdiction of admiralty in contract depends upon the subject matter of the contract."[22] To determine whether a contract gives rise to maritime jurisdiction, courts look to "the nature and character of the contract," and ask whether it has "reference to maritime service or maritime transactions," because "the fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime *commerce*.'"[23] A contract is not considered maritime merely because the services to be performed thereunder *refer* to a ship, its business or navigable waters, or because the ship is the *object* of such services.[24] Rather, for a contract to be maritime, "there must be a direct and substantial link between the contract and the ***operation*** of the ship, its ***navigation***, or its

---

[21] *See Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 675 F. Supp. 146, 150 (S.D.N.Y. 1987) ("It is elementary hornbook law that a contract for the sale of a vessel is not within the admiralty jurisdiction of the district courts."), *aff'd*, 875 F.2d 388 (2d Cir. 1989).

[22] 8 Steven F. Friedell, *Benedict on Admiralty* § 2.04 (7th ed. 2021) (citing *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603 (1991)).

[23] *Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 24-25 (2004) (quotations omitted); *Harley Mullion & Co. Ltd. v. Caverton Marine Ltd.*, No. 08-cv-5435 (BSJ), 2008 WL 4905460, at *3 (S.D.N.Y. Aug. 7, 2008).

[24] *See generally* 8 *Benedict* § 2.04; *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd.*, 968 F.2d 196, 200 (2d Cir. 1992) ("[I]n examining whether admiralty jurisdiction encompasses a claim, a federal court must initially determine whether the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction.").

***management afloat***, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping."[25]

The IMA has no such link, much less a direct and substantial one, to these traditional maritime concerns. The IMA involves investment management services for loans which YieldStreet securitized. YieldStreet made the loans for the borrower to finance ship purchases. They did not involve ship operations. Another indicator of the IMA's finance purpose is that Four Wood was required to be a registered investment advisor to complete its contractual obligations.[26] The mere fact that ships are the *object* of the financial transactions, loans, or leases brokered by Four Wood stops well short of conferring maritime jurisdiction to this Court.

Similarly, Plaintiffs' allegations that Four Wood's contractual obligation to "monitor … the underlying security" and "to keep track of the location of the vessels" by "using a third-party tracking system" does not give rise to admiralty jurisdiction either.[27] Setting aside the incontrovertible fact that keeping track of the location of the vessels by using a third-party tracking system is precisely what Four Wood did. Also, setting aside YieldStreet's redefinition of the term "monitor" from the IMA into an obligation to constantly keep physical tabs of a location of a ship is a provision nowhere found in the IMA. Use of a third-party tracking system to determine the location of vessels is neither the principal object of the IMA nor a task directly and substantially linked to the navigation, operation, or management of vessels afloat. Four Wood's (or indeed YieldStreet's) use of such a third-party tracking system has no impact on any vessels getting from

---

[25] 8 *Benedict* § 2.04 (emphases added) (citing *Nehring v. S.S. M/V Point Vail*, 901 F.2d 1044 (11th Cir. 1990)).

[26] IMA Ex. B ¶¶ (d)(B), (d)(K).

[27] Compl. ¶ 42.

point A to point B in maritime commerce. The vessel operates regardless of whether third-party tracking system receive signals from a ship's automatic identification system transponders and then uploads them to a common database for the world to see and use at their convenience. Thus, the "monitor" term of the IMA on which YieldStreet so heavily relies is far too removed from vessel navigation, operation, or management and does not transform the Parties' financial advisory contract into a maritime contract that gives rise to federal maritime and admiralty jurisdiction.

Courts have repeatedly refused to classify a contract as maritime and assert admiralty jurisdiction merely because a vessel is in some way involved. Indeed, the following contracts are considered non-maritime: contracts for the building of a vessel[28] and the sale of a vessel;[29] contracts for the sale of a vessel, generally;[30] contracts for the sale of a vessel framed as a charter with option to purchase at the end of the term for the charter hire already paid;[31] and contracts for services in purchasing a vessel.[32] Notably, in *Unicorn Bulk Traders Ltd. v. Fortune Mar. Enters.,*

---

[28] *E.g.*, *People's Ferry Co. v. Beers*, 61 U.S. 393, 401-02 (1857); *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 99-100 (5th Cir. 1992).

[29] *E.g.*, *Lynnhaven Dolphin Corp. v. E.L.O. Enters., Inc.*, 776 F.2d 538, 541 (5th Cir. 1985); *El Fenix de Puerto Rico v. Serrano Gutierrez*, No. 90-1382 (JP), 1991 U.S. Dist. LEXIS 20857, at *11 (D.P.R. Sept. 9, 1991).

[30] *See Hydra Offshore*, 675 F. Supp. at 150 ("It is elementary hornbook law that a contract for the sale of a vessel is not within the admiralty jurisdiction of the district courts."); *accord* 1 *Benedict* § 186 ("Although never held by the Supreme Court, it has been well established by the lower courts that contracts for the sale of the vessel are non-maritime. The doctrine is perhaps best understood as an analogy to the rule that excludes shipbuilding contracts from the admiralty jurisdiction." (citations omitted)); 2 *Am. Jur. 2d Admiralty* § 60 (2d ed. 2021) ("A contract for the sale of a vessel is generally not within a federal court's admiralty jurisdiction because such a contract is not maritime in nature.").

[31] *The Ada*, 250 F. 194, 195-97 (2d Cir. 1918); *Castleton Commodities Shipping Co. Pte v. HSL Shipping & Logistics NA, Inc.*, No. 16-6619, 2016 WL 4419137, at *4-6 (E.D. La. Aug. 19, 2016).

[32] *Wilkins v. Commercial Inv. Trust Corp.*, 153 F.3d 1273, 1276-78 (11th Cir. 1998) (where the court concluded that investors who posted letter of credit or advanced funds to prospective purchaser lack a maritime contract, notwithstanding that the funds ultimately paid off ship refurbishments).

*Inc.*, this Court cited such precedent with approval holding that because "a contract to purchase a vessel at a fixed price is not justiciable in admiralty," there was no maritime jurisdiction under 28 U.S.C. 1333.[33] The IMA is even more remote from maritime commerce than a contract to purchase a vessel between buyer and seller – the IMA is a contract for Four Wood to assist in sourcing and arraigning loans from the lender-client (YieldStreet) to a borrower-buyer (North Star) for North Star to purchase a vessel from a third-party seller-owner.

### 2. Contracts preliminary to maritime contracts are not maritime contracts.

Moreover, "maritime law does not take cognizance of agreements which are not maritime although they are preliminary to maritime contracts and have direct reference to them."[34] In the often-quoted words of the court in *The Thames*,

> [t]he distinction between preliminary services leading to a maritime contract and such contracts themselves have been affirmed in this country from the first, and not yet departed from. It furnishes a distinction capable of somewhat easy application. If it be broken down, I do not perceive any other dividing line for excluding from the admiralty many other sorts of claims which have a reference, more or less near or remote, to navigation and commerce. If the broker of a charter-party be admitted, the insurance broker must follow, -- the drayman, the expressman, and all others who perform services having reference to a voyage either in contemplation or executed.[35]

Accordingly, while a policy of marine insurance is a maritime contract, an agreement to make or procure a particular policy is not.[36] Similarly, the chartering of a vessel is a maritime service and the charter party is a maritime contract, but an undertaking to make a charter party (or

---

[33] No. 08 Civ. 9710(PGG), 2009 WL 125751, at *2-3 (S.D.N.Y. Jan. 20, 2009) (citing *The Ada*, 250 F. 194).

[34] 1 *Benedict* § 183 (citing *Johnson Prods. Co. v. M/V La Molinera*, 619 F. Supp. 764 (S.D.N.Y. 1985)).

[35] *The Thames*, 10 F. 848 (S.D.N.Y. 1881).

[36] *F.S. Royster Guano Co. v. W.E. Hedger Co.*, 48 F.2d 86, 87 (2d Cir. 1931).

to procure a person to make one) is not.[37] Contracts "collateral" to a maritime contract are also not necessarily maritime; for example, a bond securing the performance of a charter party is not a maritime contract, although the charter party itself is; that is because the surety on the bond neither promises performance of the charter party nor is authorized to do so—her obligation is merely to pay damages in the event of non-performance.[38] Unless one party makes an explicit promise to perform a charter in the default of another, which the Parties have expressly disclaimed in the IMA,[39] the contract is not maritime.[40]

At most, the IMA is supportive of YieldStreet's loans. Agreements that support loans related to maritime commerce are not themselves maritime. In *Kreatsoulas*, the court held that neither a guaranty of a shipping loan nor a collateral assignment of maritime cargo were maritime

---

[37] *Boyd, Weir & Sewell, Inc. v. Fritzen-Halcyon Lijn, Inc.*, 709 F. Supp. 77, 78-79 (S.D.N.Y. 1989); *see also Carter-Green-Redd, Inc. v. USS Cabot/Dedalo Museum Found.*, 756 F. Supp. 276, 278-79 (E.D. La. 1991) (option to enter into charter of vessel is non-maritime); *Taylor v. Weir*, 110 F. 1005 (D. Or. 1901); *Thames*, 10 F. 848; *Torices v. The Winged Racer*, 24 F. Cas. 62 (S.D.N.Y. 1858).

[38] *Advantage Sky Shipping LLC v. Icon Equip. & Corp. Infrastructure Fund Fourteen Liquidating Trust*, 427 F. Supp. 3d 501, 503-05 (S.D.N.Y. 2019) (involving a letter of undertaking).

[39] *See* IMA ¶ 9 ("that [Four Wood] cannot and does not guarantee the future performance of [YieldStreet's] Account or any specific level of performance, the success of any investment recommendations or strategy that [Four Wood] may use, or the success of [Four Wood's] overall management of [YieldStreet's] Account").

[40] *Compare Northern Star S.S. Co. v. Kansas Milling Co.*, 75 F. Supp. 534, 535-36 (S.D.N.Y. 1947), *with Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966, 973-74 (2d Cir. 1975) (guarantor bound to arbitrate where it agreed in case of default to "perform the balance of the contract" and to "assume the rights and obligations" of the charterer). *See also Sea Trade Mar. Corp. v. Coutsodontis*, No. 09 Civ 488(BSJ)(HBP), 2012 WL 3594288, at *4 (S.D.N.Y. Aug. 16, 2012) ("It is well settled that, while a contract for the use or charter of a vessel is maritime in nature, the contract for a sale of a vessel is non-maritime."); *Aggelikos Prostatis Corp. v. Shun Da Shipping Grp. Ltd.*, 646 F. Supp. 2d 330, 335 (S.D.N.Y. 2009) ("[A] contract solely for the sale of a vessel does not fall within the admiralty jurisdiction."); *Vrita Marine Co. v. Seagulf Trading LLC*, 572 F. Supp. 2d 411, 412 (S.D.N.Y. 2008) ("The breach of contract that [plaintiff] alleges here is that defendant … failed to take delivery of the vessel at issue. Taking delivery of a vessel is not a maritime obligation and it does not implicate concerns of maritime commerce. It is a simple breach of a sale and purchase contract and does not turn a non-maritime contract into a maritime dispute.").

contracts. "While the contract at issue involved the freights of maritime vessels, its primary purpose, like that of the personal guaranty, was to provide collateral for a loan. The assignment had no relation to the operation or management of the vessels."[41] Thus, the guaranty and collateral assignment in *Kreatsoulas*, like the IMA here, lacked the necessary link to maritime commerce.

The IMA is further analogous to charter broker agreements which are uniformly held not to be maritime contracts.[42] In *Drakos*, the Second Circuit described the role of a broker as including advising the client as to appropriate charters, identifying charters, performing due diligence and negotiating terms.[43] Courts following *Drakos* have held that gathering and transmitting information about ships and their operations between a ship owner and charterer is part of the broker's role and does not give rise to maritime jurisdiction. For example in *Tankship*, the plaintiff claimed maritime jurisdiction arguing that his brokerage contract gave him an operational role in the management of his client's chartered ships.[44] The court found instead that the plaintiff's role was limited to a "liaison for facilitating communication and distribution of information relating to the operation of the vessels."[45] The limited monitoring duties in the IMA are akin to the informational obligations at issue in *Tankship* and thus not maritime.

---

[41] *Kreatsoulas v. Freights of the Levant Pride*, 838 F. Supp. 147, 152 (S.D.N.Y. 1993).

[42] *E.g.*, *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 133-34 (2d Cir. 1998); *Maritima Petroleo E Engenharia Ltda. v. Ocean Rig 1 AS*, 78 F. Supp. 2d 162, 167 (S.D.N.Y. 1999). *See also Boyd*, 709 F. Supp. at 78-79; *Carter-Green-Redd*, 756 F. Supp. at 278-79 (option to enter into charter of vessel is non-maritime); *Taylor*, 110 F. 1005; *Thames*, 10 F. 848; *Torices*, 24 F. Cas. 62.

[43] *Drakos*, 140 F.3d 129.

[44] *Tankship Int'l, LLC v. El Paso Merch. Energy-Petroleum Co.*, 428 F. Supp. 2d 93, 99-100 (D. Conn. 2006) (distinguishing between an operational agreement and a simple brokerage agreement).

[45] *Tankship*, 428 F. Supp. 2d at 101.

Four Wood's role was also no more maritime than that of the plaintiff in *Tankship* or *Drakos* (albeit a step removed as the correspondence here relate to loans, not shipboard operations). The IMA calls for Four Wood to (i) identify potential transactions, (ii) perform due diligence, (iii) assist YieldStreet in negotiating terms, and (iv) monitor loan repayments, the underlying security, and compliance with agreed terms.[46] As in *Tankship*, Four Wood acted as a conduit for information between YieldStreet and its borrowers. Four Wood was obligated to forward any financial information it received from the borrowers (without representation or warranty as to accuracy or completeness), as well as any information it learned concerning potential breaches by borrowers, and potential opportunities for new loans from existing borrowers.[47] In the event of a default by a borrower, Four Wood had no authority to act except to convey YieldStreet's decisions and intentions. Four Wood was not a party to the loans and, thus, had no independent ability to act regarding them. The IMA provides that Four Wood will act "as (or if) directed by" YieldStreet but provides no authority to take action with respect to a loan.[48] Thus, Four Wood could tell a borrower (if so instructed) that YieldStreet had accelerated a note but could not itself accelerate the note. Such finance management related activities are not fundamentally maritime in nature but rather, are at most to preliminary and several steps removed from maritime commerce.

In their pre-motion letter, Plaintiffs cherry-pick language from the Supreme Court's decision in *Kirby*,[49] a case that involved cargo shipped by sea from Australia to the United States pursuant to a "through" bill of lading covering both the sea and the land legs of the voyage; the

---

[46] IMA ¶¶ b, c, d, f.

[47] IMA ¶¶ 11, 14.

[48] IMA ¶ f.

[49] *See* Plaintiffs' July 23, 2020 Letter (ECF No. 19) at 2 (citing *Kirby*, 543 U.S. at 24).

cargo was damaged on land when the train carrying it derailed.[50] The Court held that the "through" bill of lading at bar was a maritime contract, because its "*sea* components" were not "insubstantial."[51] Stated otherwise, *Kirby* established that if the sea component of a "mixed" contract is substantial, the contract is maritime.[52]

While *Kirby* is indeed a maritime "case about a train wreck," it hardly supports assertion of maritime jurisdiction in this case. First, the IMA is not a "mixed" contract to which the *Kirby* rule applies; rather, it is a brokerage and investment management services agreement that lacks any (let alone a "substantial") maritime commerce component. Second, following *Kirby*, courts in this Circuit have consistently held that admiralty jurisdiction will exist if the non-maritime components of a contract are more than incidental, "provided the '***principal objective***' of the contract is the furtherance of maritime commerce."[53] Since the IMA's principal objective is not related to maritime commence (it pertains to investment management services), per *Kirby* and relevant Second Circuit jurisprudence, the IMA is not a maritime contract.

### 3. This Court also lacks maritime tort jurisdiction over the instant dispute.

If Plaintiffs attempt to assert admiralty tort jurisdiction in connection with their tort-based allegations, such endeavor will fail.[54] To establish jurisdiction in a maritime tort case, the plaintiff

---

[50] *Kirby*, 543 U.S. 14.

[51] *Kirby*, 543 U.S. at 27 ("[S]o long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce--and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage. Geography, then, is useful in a conceptual inquiry only in a limited sense: If a bill's *sea* components are insubstantial, then the bill is not a maritime contract.").

[52] *See also Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 99 (2010).

[53] *D'Amico Dry, Ltd. v. Primera Mar. (Hellas), Ltd.*, 886 F.3d 216, 221 (2d Cir. 2018) (emphasis added) (quotation omitted); *Folksamerica Reins. Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 315 (2d Cir. 2005); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 822 F.3d 620, 635-36 (2d Cir. 2016).

[54] Plaintiffs have not asserted maritime tort jurisdiction in their Complaint. The Complaint merely

must allege that the tort (1) occurred on navigable waters; and (2) bore some relationship to traditional maritime activity.[55]

Neither the *locus* nor the *nexus* requirement is satisfied. None of the torts asserted in the Complaint occurred on navigable waters. The alleged torts lack "a potentially disruptive impact on maritime commerce" and "'the general character' of 'the activity giving rise to the incident'" does not show any let alone a "substantial relationship to traditional maritime activity."[56]

In sum, there is no basis for the Court to assert admiralty and maritime jurisdiction over the Complaint as it does not involve either a maritime contract or a maritime tort. As Plaintiffs allege no other basis for this Court's assertion of subject matter jurisdiction over this dispute, the entire action must be dismissed.

## B.     The Claims Against Simmons Should Be Dismissed for Lack of Personal Jurisdiction

This Court has no personal jurisdiction over Simmons under New York statutory or U.S. constitutional law. The Complaint is devoid of any factual basis upon which this Court could exercise *in personam* jurisdiction over Simmons. It is undisputed that Simmons is a citizen of the United Kingdom, a domiciliary of Cyprus, and not a party to the IMA.[57] Moreover, Plaintiffs allege that Cyprus-based Simmons introduced Dubai-based borrowers to New York-based YieldStreet (with its primary point of contact based in Athens) for money to purchase ships overseas in order to sell them in South Asia. Any nexus to New York is tenuous at best.

---

alleges that "[t]his Court has subject matter jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to claims falling under this Court's original jurisdiction that they form part of the same case or controversy." *See* Compl. at ¶ 31. Defendants briefly address this point for purposes of completeness and in case Plaintiffs amend a second time to assert maritime tort jurisdiction.

[55] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

[56] *Grubart*, 513 U.S. at 534 (quoting *Sisson v. Ruby*, 497 U.S. 358, 364, 364 n.2, 365 (1990)).

[57] Simmons Decl. ¶¶ 2,6; IMA.

Under New York law, this Court must engage in a two-step inquiry to determine if jurisdiction exists over foreign domiciliary Simmons: (i) whether Simmons is subject to specific jurisdiction under New York's long-arm statute, CPLR § 302,[58] and (ii) whether the exercise of jurisdiction over Simmons comports with the constitutional requirements of due process.[59] Both steps yield the same conclusion: Simmons is not subject to this Court's personal jurisdiction.

### 1.     This Court does not have specific jurisdiction over Simmons.

This Court does not have specific jurisdiction over Simmons where the Complaint is devoid of any allegations that (i) Simmons transacted business within New York; ***and*** (ii) the causes of action against Simmons arose from his purported business transactions.[60] As alleged, Simmons transacted business outside of New York. His primary alleged job was to coordinate between a Dubai borrower and Plaintiffs' foreign-based employees relating to loans on ships traveling to South Asia for salvage.

### a.     Simmons did not transact business in New York.

Simmons should not be compelled to answer suit in this jurisdiction based solely on Plaintiffs' connections with New York. Plaintiffs allege no sustained or substantial transaction of

---

[58] Plaintiffs do not assert that this Court has general jurisdiction over Defendant. In any event, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v Brown*, 564 US 915, 924 (2011). Because Simmons is a domiciliary of Cyprus, New York courts do not have general jurisdiction over Simmons. Moreover, Simmons is not a party to the IMA and its forum selection clause. *See generally* IMA. As such, Simmons is not bound by the IMA and did not consent to personal jurisdiction. If a U.S. forum was important to Plaintiffs, knowing that they were entering into a foreign transaction with foreign parties, they should have obtained a forum selection clause from Simmons, but they failed to do so.

[59] *See Verragio, Ltd. v. Malakan Diamond Co.*, No. 16 Civ. 4634 (CM), 2016 WL 6561384, at *2 (S.D.N.Y. Oct. 20, 2016) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007)).

[60] *See* CPLR § 302(a)(1); *Schultz v. Safra Nat'l Bank*, 377 Fed. Appx. 101, 103 (2d Cir. 2010). Plaintiffs appear to claim special jurisdiction and invoke CPLR § 302(a)(1) with respect to Simmons. *See* Plaintiffs' Feb. 10, 2021 Letter (ECF No. 45) at 3.

business by Simmons in New York. Indeed, the entire nature of Simmons involvement in this action is foreign.

New York courts define the "transact[ion] [of] business" as purposeful activity—"some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[61] Not all purposeful activity, however, constitutes a "transact[ion] [of] business" within the meaning of section 302(a)(1). "[C]ontacts with New York have been found to sustain personal jurisdiction only where a 'defendant's direct and personal involvement … on his own initiative … project[ed] himself' into New York to engage in a 'sustained and substantial transaction of business.'"[62]

To determine whether non-domiciliary Simmons purposely availed himself of the privilege of conducting activities within New York, "[this] [C]ourt must look at the totality of circumstances to determine the existence of purposeful activity and may not subject [Simmons] to jurisdiction based on 'random,' fortuitous,' or 'attenuated' contacts."[63] At most, Plaintiffs claim jurisdiction on the basis of limited communications from Simmons to Plaintiffs. But the case law is clear: "Telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction."[64] ***"[W]here a defendant communicates with a New York plaintiff in connection with a transaction that has***

---

[61] *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[62] *Aquiline Capital Partners LLC v. Finarch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (quoting *Parke-Bernet Galleries v. Franklyn*, 26 N.Y.2d 13, 18 (1970)).

[63] *Aquiline*, 861 F. Supp. 2d at 387 (quoting *PaineWebber Inc. v. WHV, Inc.*, No. 95 Civ. 0052 (LMM), 1995 WL 296398, at *2 (S.D.N.Y. May 16, 1995)).

[64] *Int'l Customs Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995) (citing cases), *aff'd*, 201 F.3d 431 (2d Cir. 1999); *see also Rosenblatt v. Coutts & Co. AG*, 750 Fed. Appx. 7, 10 (2d Cir. 2018) ("long-distance communication with a New York plaintiff does not require a conclusion that the defendant transacted business in New York").

*little connection to New York other than the communication itself, the defendant has not transacted business in New York."* [65]

Simmons' communications do not establish personal jurisdiction. First, Plaintiffs allege "Defendants, and Baffico and Simmons specifically, had introduced YS Marine to North Star" (ECF No. 45 at 3 (quoting Compl. ¶ 53)), but fail to plead when, where, or how the introduction to the ***Dubai-based*** company took place. Second, Plaintiffs allege "Simmons, on behalf of the Four Wood Defendants, sent Yieldstreet detailed pitch materials for a proposed transaction for over $40 million in which a Lakhani-related entity was seeking to refinance three vessels that had been financed by another lender" (ECF No. 45 at 3 (quoting Compl. ¶ 69)), but the email, forwarding documents from ***Dubai-based*** Dubai Navigation Corp., was sent by ***Cyprus-based*** Simmons to ***New York-based*** George Cambanis (Managing Director at YMF) and ***Athens-based*** Stefanos Fragos (Senior Representative at YMF). Simmons Decl. ¶ 9, Ex. 2. Plaintiffs do not even claim that Cambanis was in New York when he received the email. *See id.* (Cambanis was in London the week before).

Plaintiffs also allege "Simmons provided Plaintiffs with false MOAs, made claims about Defendants' purported tracking of vessels that, in reality, were being turned into scraps of metal on South Asian beaches, and continued to offer assurances about the North Star Borrowers' performance well past the issuance of the loan for the purchase of the *Atban/Watban* in September 2019" (ECF No. 45 at 3 (quoting Compl. No. ¶ 81)), but similarly fail to plead a non-"attenuated" contact with New York. *See, e.g.*, Simmons Decl. ¶ 8, Ex. 1 (email from Dubai to Cyprus to Athens); *id.* at ¶ 10, Ex. 3 (email about Dubai from Cyprus to Athens and New York, but Plaintiffs

---

[65] *Three Five Compounds, Inc. v. Scram Techs., Inc.*, No. 11 Civ. 1616(RJH), 2011 WL 5838697, at *8 (S.D.N.Y. Nov. 21, 2011) (emphasis added) (collecting cases).

do not claim the directors were in New York when they received the email); *id.* at ¶ 11, Ex. 4 (same). At bottom, Simmons would email YMF's New York-based directors on occasion concerning foreign loans to North Star.

The communications alleged by Plaintiffs do not amount to "purposeful availment" of the laws of New York. None of Simmons' purported conduct occurred in New York; instead, Plaintiffs allege that Cyprus-based Simmons sent emails to Plaintiffs' Athens and New York -based employees in connection with Plaintiffs' loans to, and based on information from, the Dubai-based Lakhani family and North Star. Although Simmons emailed Plaintiffs' New York-based directors on occasion, such communications were incidental consequences of facilitating the foreign loans and insufficient to "project" Simmons into New York (regardless of whether the directors were in New York when they received the email). *See, e.g.*, *Three Five*, 2011 WL 5838697, at *7-11 (hundreds of phone calls and emails to New York, both during negotiations and after contract formation, and concerning goods to be shipped from New York, were insufficient to establish jurisdiction).

Considering the allegations in their totality, this Court should decline to find that Simmons' communications directed to Plaintiffs amount to the transaction of business in New York.

> **b.    Plaintiffs' fail to plead that the claims against Simmons arose from his purported business transactions.**

Even if Simmons transacted business in New York (*he did not*), specific jurisdiction remains lacking because Plaintiffs' claims against Simmons do not arise from the purported conduct. There must be an ***"articulable nexus"*** or a ***"substantial relationship"*** between a defendant's in-state activity and the cause of action asserted. *See McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981) (emphasis added); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (emphasis added). "A connection that is 'merely coincidental' is insufficient to support

jurisdiction," and the events giving rise to an alleged injury must have more than a "tangential relationship" to the defendant's alleged contacts with New York. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103-04 (2d Cir. 2006).

On the present jurisdiction record, Plaintiffs have not shown an "articulable nexus" or "substantial relationship" between their claims against Simmons and his purported transactions in New York. Plaintiffs' claims against Simmons arise from alleged conduct committed outside of New York—that is, the alleged conduct originated in Dubai and/or Cyprus, not New York. *See generally* Compl. That Plaintiffs are located in New York is "merely coincidental" and of no relevance to the facts or legal issues underlying this action.

Plaintiffs claim they will "introduc[e] inculpatory emails and other documents Simmons directed to New York, evidence regarding Simmons traveling to New York to meet with Plaintiffs, and public documents showing Simmons' role with [Four Wood], including his Linkedin [sic] profile, which describes how he 'successfully negotiated a Joint Venture Agreement with Four Wood Capital in New York establishing the GMTC platform'" (ECF No. 45 at 3 n.2 (emphasis omitted)), no such allegations are set forth in the Complaint. Simmons did meet Plaintiffs in New York, but it was one time and on March 19, 2020—two years after the date of the IMA, and months after Plaintiffs issued loans to North Star, *and when the loans were already in default* (Compl. ¶¶ 9, 53)—to discuss the ongoing legal disputes between Plaintiffs and North Star. Simmons Decl. ¶ 12. This single meeting is insufficient to show Simmons transacted business within New York.[66] None of these purported transactions—that Plaintiffs ***intend*** to allege—have an "articulable nexus" or "substantial relationship" with the claims against Simmons.

---

[66] *See Three Five*, 2011 WL 5838697, at *11 ("Courts in this Circuit have repeatedly and virtually universally declined to find that [a meeting that did not occur during contract negotiations and did not result in a contract] amount to the transaction of business." (collecting cases)).

Plaintiffs fail to make a *prima facie* showing of personal jurisdiction over Simmons under New York statutory law; therefore, Simmons' motion to dismiss under Rule 12(b)(2) should be granted.

### 2.      Due process considerations also do not allow the exercise of personal jurisdiction over Simmons.

Plaintiffs fail to plead general or specific jurisdiction; this Court need not address whether due process considerations would allow for the exercise of personal jurisdiction over Simmons. *See Best Van*, 490 F.3d at 244 ("If jurisdiction is statutorily impermissible, of course, we need not reach the question of its constitutionality."). Nevertheless, it bears noting that due process considerations—which mandate "sufficient minimum contacts" and "traditional notions of fair play and substantial justice"—forbid the exercise of personal jurisdiction over Simmons. *See Waldman v. PLO*, 835 F.3d 317, 331 (2d Cir. 2016).

### a.      Simmons does not have sufficient minimum contacts with the State of New York.

The minimum contacts inquiry requires this Court to determine whether Simmons has sufficient minimum contacts with New York to justify this Court's exercise of jurisdiction. *See id.* at 331 (citing cases). Even if Plaintiffs could somehow shoehorn their claims against Simmons into CPLR § 302 (*they cannot*), exercising jurisdiction here would run afoul of due process considerations.

Plaintiffs fail to plead any contacts between Simmons and ***New York***, let alone any such contacts related to the claims against him. *See generally* Compl. There is no meaningful connection between New York and Simmons' suit-related conduct. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection ***with the forum State***." (emphasis added)). Simmons'

alleged interactions with "Plaintiffs (located in New York)"[67] and "the other Defendants (located in New York at that time)" (ECF No. 45 at 3) do not comport with the minimum contacts required to satisfy due process. *See Walden,* 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, ***not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State***." (emphasis added)); *7 W. 57th St. Realty Co., LLC v. CitiGroup, Inc.*, No. 13 Civ. 981(PGG), 2015 WL 1514539, at *10 (S.D.N.Y. Mar. 31, 2015) ("[D]ue process requires more for the exercise of personal jurisdiction. The Foreign Banks' suit-related conduct must tie them to New York *itself*, not just to a plaintiff who happens to reside in New York.").[68]

Plaintiffs and Four Wood cannot be the only link between Simmons and New York, and thus Plaintiffs fail to meet the minimum contacts arm of the constitutional inquiry.

## b. New York jurisdiction is not reasonable.

Even if non-domiciliary Simmons possessed the necessary minimum contacts with New York (*he does not*), Plaintiffs must still show that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice" and is thus reasonable in accordance with due process considerations. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987) (quotation omitted). The Supreme Court has set forth five factors that must be considered when determining the reasonableness of a particular exercise of jurisdiction:

> A court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief. It must also weigh in its determination [4] the interstate judicial system's interest in obtaining the most

---

[67] Notably, most of these alleged interactions were directed to Plaintiffs' employees in Greece.

[68] *See also, e.g.*, *Anchor v. Novartis Grimsby Ltd.*, No. 05-CV-7S, 2006 WL 3419846, at *8 (W.D.N.Y. Nov. 27, 2006) ("Defendants' contacts with New York, which were limited to telephone, fax and email discussions, are simply not of the type that [d]efendants could reasonably be expected to anticipate being haled into court here. This is particularly so because [p]laintiffs' causes of action do not stem from these contacts." (citation omitted)).

efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (quotation omitted). With the severe burden on Simmons and the minimal interests of Plaintiffs and New York, these factors favor Simmons.

Simmons resides and works in Cyprus, and litigating a case in New York would be a burden for him (particularly during a global pandemic). Simmons Decl. ¶ 2. Not only would he be required to "traverse the distance" from Cyprus to New York, but he would face the ***"unique burden[]"*** of submitting himself to a foreign nation's judicial system. *Id.* at 114 (emphasis added) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). Simmons is not bound by the IMA and did not expect Plaintiffs' assertion of jurisdiction. Simmons Decl. ¶ 6. Plaintiffs are organized under the laws of Delaware, not New York. Compl. ¶¶ 17-24. Plaintiffs have filed cases concerning the underlying transactions in courts across the world, including Malaysia and England. *Id.* ¶ 15. Plaintiffs fail to plead the reasonableness of New York, and thus fail to meet the second arm of the constitutional inquiry. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (the exercise of jurisdiction may be defeated where the defendant "present[s] a compelling case that the presence of some other considerations would render jurisdiction unreasonable").

For the foregoing reasons, this Court should dismiss Simmons from this action. There is no nexus between the claims against Simmons, Simmons himself, and New York, and thus this Court does not have personal jurisdiction over Simmons.

**C.    The YMF-SPE's Claims Should Be Dismissed for Forum Non Conveniens Because the Applicable Forum Selection Clause Sets Venue in New York State Courts**

**1.    The applicable forum selection clause sets venue in New York State courts.**

The YMF-SPE's claims must be litigated in New York State courts. The IMA is by and between Four Wood and YMF, and the YMF-SPE's "bec[a]me a party to th[e] [IMA] by executing a joinder supplement to th[e] [IMA]." IMA at 1, Ex. C; *see also* Compl. ¶¶ 39, 125. The Joinder Supplement—incorporated by reference into the IMA—contains a forum selection clause, which provides: "any action brought hereunder shall be brought in ***the courts of the State of New York***, located in the County of New York." IMA Ex. C § 4 (emphasis added). The "courts of the State of New York" language sets venue in New York State courts (*and not this Court*) for the YMF-SPE's claims.[69] *See, e.g.*, *Wiest Int'l, GMBH v. Zobel*, No. 17-CV-6722 (JFB) (GRB), 2018 WL 736010, at *2 (E.D.N.Y. Feb. 6, 2018) ("courts of the State of New York" sets venue in New York State court); *Rogen v. Memry Corp.*, 886 F. Supp. 393, 396 (S.D.N.Y. 1995) ("The use of the word 'of' and the phrase 'State of' is sufficiently specific and unambiguous to require that actions regarding the Agreement be litigated in New York State court."); *see also Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081-82 (9th Cir. 2009) (Federal courts by definition are not "courts of" the state in which they are situated).

**2.    The applicable forum selection clause is valid and enforceable.**

The forum selection clause is valid and enforceable, there is no reason for the provision to be set aside. The YMF-SPE's claims must be dismissed. In this Circuit, the validity of a forum

---

[69] This interpretation finds support in the broader provision of the IMA. *Compare* IMA Ex. C § 4 ("shall be brought in the courts of the State of New York, located in the County of New York"), *with id.* at ¶ 20 ("the exclusive jurisdiction of the courts of the State of New York ***and of the United States District Court for the Southern District of New York***" (emphasis added)).

selection clause is determined under the four part inquiry articulated in *Phillips v. Audio Active, Ltd*., 494 F.3d 378, 383-84 (2d Cir. 2007). The clause at-issue is phrased in both clear and unambiguous language in the agreement that the YMF-SPE seeks to enforce; the "shall be brought" language is mandatory and establishes New York state courts in the County of New York as an obligatory venue; and the YMF-SPE pleads that all its claims arise out of the IMA.[70] The *Phillips* factors are therefore satisfied and the forum selection clause is presumptively enforceable. *See, e.g.*, *Ujvari v. 1stdibs.com, Inc.*, No. 16 Civ. 2216 (PGG), 2017 WL 4082309, at *8-11 (S.D.N.Y. Sept. 13, 2017) (granted motion to dismiss for *forum non conveniens* because of forum selection clause); *Wiest*, 2018 WL 736010, at *2-5 (same). The YMF-SPE needs to "mak[e] a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching," *Phillips*, 494 F.3d at 383-84 (quotation omitted), but will be unable to do so. Indeed, the Supreme Court has recognized public interest "factors will rarely defeat a [motion to dismiss under *forum non conveniens*]," and thus "the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

Accordingly, this Court should dismiss the YMF-SPE's claims and the YMF-SPE Plaintiffs from this action under the *forum non conveniens* doctrine. YMF-SPE must litigate its claims in New York State courts.

### D.     The Complaint Fails to Plausibly Allege a Claim for Relief

The gravamen of the Complaint is Defendants' obligations under the IMA and whether they failed to perform those obligations. The Complaint's breach of contract claim fails because it seeks to impose contractual obligations to which the Defendants never agreed and does not

---

[70] *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (forum selection clause applicable to claims "arising out of" contractual relationship was "not restricted to pure breaches of the contracts containing the clauses" but also covered related securities and antitrust claims).

adequately explain how Defendants supposedly fell short of such obligations. Failing there, Plaintiffs seek identical relief under ill-conceived tort theories of aiding and abetting fraud, fraud, breach of fiduciary duty, negligent misrepresentation, negligence, and conversion. Each of the Plaintiffs' tort claims require that they allege that Defendants owed them a duty apart from those created through the IMA. Plaintiffs make no such allegation because there is no duty owed by Four Wood to YieldStreet independent from their contract. Even if there was a duty, the tort claims require that YieldStreet allege Defendants' breach was the proximate cause of their injury. Plaintiffs cannot plausibly allege this proximate cause because, as Plaintiffs admit, it was North Star's alleged fraud that is the proximate cause of Plaintiffs' alleged injury. In addition, the economic loss doctrine, failure to plead fraud with particularity, and inability to plausibly allege all the elements of conversion further dooms Plaintiffs' tort claims. Accordingly, even if this Court had subject matter jurisdiction, the Court would be compelled to dismiss Plaintiffs Complaint.

### 1.    The Complaint fails to state a claim for breach of contract.

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."[71] "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions."[72]

The Complaint fails to state a claim for breach of contract for the following reasons: (i) the Complaint is bereft of allegations concerning how Defendants purportedly breached the IMA; (ii)

---

[71] *WiAV Solutions Inc. v. HTC Corp.*, No. 19 Civ. 4978 (PGG), 2020 WL 3547744, at *7 (S.D.N.Y. June 30, 2020).

[72] *WiAV*, 2020 WL 3547744, at *7 (quoting *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110, 14 (2d Cir. 2014)).

the IMA did not obligate Defendants to track the physical location of the vessels securing the Loans; and (iii) by Plaintiffs' own admission, the notion of damages at this stage is premature and speculative and, in any event, (iv) the IMA expressly forecloses on their ability to obtain consequential damages in the event of a breach.

**a.**      **The Complaint fails to allege how Defendants breached the IMA.**

Plaintiffs have failed to allege "the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated."[73] Plaintiffs have not plausibly specified which provisions in the IMA were breached, or how. The Complaint references the IMA without submitting a copy to be reviewed by the Court. YieldStreet summarily (and implausibly) alleges that Four Wood failed to comply with the IMA by not knowing the location of the vessels at all times while contradictorily alleging that North Star engaged in a monumental fraud to defeat such monitoring efforts. Plaintiffs simultaneously concede Four Wood's compliance with its contractual responsibility of reporting vessel locations provided by third party trackers.[74] Courts in this district have dismissed breach of contract claims in this circumstance.[75] Particularly egregious is the claim for contract or any other breach by Marfin VI

---

[73] *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644-45 (S.D.N.Y. 2011); *accord Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002), *aff'd*, 65 Fed. Appx. 736 (2d Cir. 2003).

[74] *Compare* Compl. at ¶ 42 (Four Wood was required to "**monitor** loan repayments, the underlying security and the compliance" (emphasis added)), ¶ 45 (Four Wood agreed to "**monitor, collect, administer and service** each loan" (emphasis added)), *and* ¶ 46 (Four Wood must provide Plaintiffs with "**notice of the occurrence**" of any default or default-related event within two days of becoming aware of such event (emphasis added)), *with* Compl. at ¶¶ 76-81 (Four Wood passed on MOAs provided by North Star to YieldStreet as required by IMA), *and* ¶ 94 (Four Wood forwarded vessel coordinates from third party tracker to YieldStreet).

[75] *See, e.g.*, *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312-13 (S.D.N.Y. 2014) (dismissing breach of contract claim because the complaint only alleged, in a conclusory fashion, that there was "an express contractual relationship between the parties," and did not provide any further details regarding the alleged agreement); *Gao v. JPMorgan Chase & Co.*, No. 14 Civ. 4281(PAC), 2015 WL 3606308, at *2-3 (S.D.N.Y. June 9, 2015); *Wolff*, 210 F. Supp. 2d

because it was never part of agreement or loan with North Star. Plaintiffs' entire complaint deals with North Star and whether there were any failures with regard to that relationship. Since Plaintiff Marfin VI was not involved with North Star at all the breach of contract and all other claims must be dismissed.

The IMA expressly provides that Four Wood would satisfy its provisions by using "**reasonable commercial judgment** in accordance with **reasonable industry standards** to carrying [sic] out its duties hereunder **but does not guarantee investment results**." IMA ¶ 8 (emphases added). In contrast to the IMA, YieldStreet alleges that the losses were caused by North Star's fraud. These cannot be assigned to Defendants. It is impossible to glean from the Complaint whether Plaintiffs mean to allege that Four Wood should have predicted the future and foreseen North Star's fraud or should have had employees stationed on each ship to continuously report on the position, destination and cargo of the North Star vessels, as distinguished as a commercially reasonably method of employing a third-party tracking system (as Plaintiffs admit they used). *Cf.* Compl. ¶ 94 (Simmons forwards coordinates). Plaintiffs would impose the impossible continuous vessel location tracking obligations which is not contractually required.

"[A] court's evaluation of a party's compliance with a 'commercially reasonable efforts' requirement does not involve a hindsight comparison of the party's actual conduct to that which could have been undertaken to produce a better result; a court should evaluate only whether the party's actual conduct was sufficient."[76] Instead, "[t]he standard for satisfying commercial reasonability under New York law is a fairly lenient one… it 'requires at the very least some

---

at 494-97; *Levy v. Bessemer Trust Co., N.A.*, No. 97 Civ. 1785(JFK), 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997).

[76] *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, No. 18-cv-5134 (JSR), 2020 WL 948853, at *2 (S.D.N.Y. Feb. 27, 2020).

conscious exertion to accomplish the agreed goal ....'"[77] Because the complaint alleges no facts that would allow the Court to objectively evaluate Defendants' actual conduct, Plaintiffs cannot "raise a right to relief above the speculative level."[78]

"When a litigant makes multiple factual allegations in related actions that blatantly contradict the complaint in the subsequent action, a court is presented with the rare occasion when the need to accept as true allegations in the complaint is obviated, and the court may consider the prior inconsistent allegations binding upon the party in the subsequent action."[79] The Court should take judicial notice of Plaintiffs' sworn statements in a related proceeding which contradict their breach allegations and demonstrate that Defendants did perform in accordance with the IMA.

For example, the Plaintiffs admit that when North Star initially defaulted in September 2019, they "were regularly in contact with [North Star], primarily through [Four Wood subsidiary] GMTC" regarding the defaults.[80] Plaintiffs and Defendants then traveled together "to Dubai to meet with [North Star] to discuss the repayment of the Loans and make an agreement."[81] Plaintiffs admit that Defendants communicated with North Star in the subsequent weeks to make inquiries regarding the ships, including: "questions about the place where the Vessels were currently registered; the entities that were listed as the registered owners of the Vessels; the documents showing that the mortgages on the Vessels had been duly registered; the status of delivery of the

---

[77] *Shane Campbell*, 2020 WL 948853, at *2 (quoting *Holland Loader Co., LLC v. FLSmidth A/S*, 313 F. Supp. 3d 447, 473 (S.D.N.Y. 2018)).

[78] *Twombly*, 550 U.S. at 555.

[79] *Pullman v. Alpha Media Pub., Inc.*, No. 12-CV-1924 (PAC)(SN), 2013 WL 1290409, at *11 (S.D.N.Y. Jan. 11, 2013) (quotations omitted), *adopted*, 2013 WL 1286144 (S.D.N.Y. Mar. 28, 2013), *aff'd*, 624 Fed. Appx. 774 (2d Cir. 2015); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 333 (2d Cir. 2000) ("Where a case involves an apparent conflict between the two sets of statements, the plaintiff must offer some explanation for the inconsistency.").

[80] *Compare* Buss Decl. ¶ 41, *with* Compl. ¶ 104.

[81] Buss Decl. ¶ 41.

Vessels by the sellers to the Borrowers and, subsequently, by the Borrowers to the Recyclers; and the geographical position of the Vessels, and more."[82] In sum, Plaintiffs' own declaration in a related action establishes that Defendants complied with their contractual obligations under the IMA.

> **b.   The IMA does not impose a commercially unreasonable obligation to continuously physically track the vessels from Four Wood's offices in Manhattan.**

Plaintiffs' attempt to allege that Defendants breached the IMA by failing to "keep track" of the physical location of the vessels.[83] Contrary to Plaintiffs' assertion, however, the IMA makes clear that Defendants agreed to serve as "loan manager and/or servicer," and in that role to reasonably monitor in accordance with industry standards (for a financing arrangement) the security of the loan, *i.e.* the vessels.[84] YieldStreet concedes it was North Star which made it impossible to verify the ships location. Buss Decl. ¶ 47 (insisting North Star turn on the global positioning system on the ships). Defendants could not promise (nor did they) to locate ships at sea or assure that North Star would not misappropriate the vessels.

"Judgment as a matter of law is appropriate where contract language is unambiguous."[85] Whether a contract is ambiguous is a question of law for the court to determine.[86] "No ambiguity exists where the contract language has a definite and precise meaning, unattended by danger of

---

[82] *Compare* Buss Decl. ¶¶ 45, 47, *with* Compl. ¶ 104.

[83] *See* Compl. at ¶¶ 1, 10-11, 42.

[84] *See* IMA ¶¶ 8-9; *see also infra* Section IV.D.2.c (discussing the contractual standard of care).

[85] *DBT GmbH v. J.L. Min. Co.*, 544 F. Supp. 2d 364, 375-76 (S.D.N.Y. 2008) (citing *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003)).

[86] *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (collecting cases).

misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion."[87]

The Complaint attempts to spin the word "monitor" in the IMA to impose an obligation that Four Wood assure the physical location of the vessels around the globe when the borrower, through fraud, is concealing that physical location. The contract has no such obligation. Defendants were not required to accomplish the impossible or the commercially unreasonable. There is no reasonable lens through which one might interpret the IMA as Plaintiffs allege.[88] Plaintiffs' alleged damages are foreclosed by the IMA and are premature.

In New York, a party to a contract may only recover consequential damages "if (1) it is demonstrated with certainty that the damages have been caused by the breach, (2) the extent of the loss is capable of proof with reasonable certainty, **and** (3) **it is established that the damages were fairly within the contemplation of the parties**."[89]

Two interrelated provisions in the IMA demonstrate that the Parties did not intend for Plaintiffs to obtain consequential damages from Defendants as a result of North Star's fraudulent default on the Loans. Section 8 plainly states that Four Wood would use commercially reasonable efforts in carrying out its duties, "**but does not guarantee investment results**."[90] The IMA provides that Four Wood "will not be liable to [YieldStreet] for (i) any loss that Investor [YieldStreet] may suffer by reason of any investment decision made or other action taken or omitted in good faith by Manager with degree of care, skill, prudence and diligence under the

---

[87] *Law Debenture*, 595 F.3d at 467 (quotation omitted).

[88] *See, e.g.*, *K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996); *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996) ("no ambiguity exists where the alternative construction would be unreasonable").

[89] *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007) (emphases added) (citing *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986)).

[90] IMA ¶ 8 (emphasis added).

circumstances that a prudent loan manager and/or servicer would use in accordance with reasonable industry standards and in accordance with the Servicing Standard, (ii) any loss arising from [Four Wood's] material adherence to [YieldStreet's] instructions, or (iii) any act or failure to act of any broker, bank, or similar agent, custodian or other third-party utilized by [Four Wood] in effecting any transaction on [YieldStreet's] behalf …."[91] In the subsequent section, YieldStreet acknowledged "that [Four Wood] cannot and does not guarantee the future performance of the [Loans] or any specific level of performance, the success of any investment recommendations or strategy that [Four Wood] may use, or the success of [Four Wood's] overall management of [YieldStreet's] Account."[92] Thus, Plaintiffs' attempts to obtain consequential damages from Defendants are barred by the plain language of the IMA.

Further, the consequential damages that Plaintiffs seek are also highly speculative. The Complaint states that Plaintiffs are currently pursuing North Star and the Lakhanis – the express guarantors of the Loans – in various asset-tracing and collection actions throughout the world.[93] In an investor class action against pending against YieldStreet in this Court regarding securities tied to the North Star loans, YieldStreet has asserted that its funds have incurred no losses. Thus, Plaintiffs' attempt to seek money damages in this case is entirely premature and speculative.[94]

---

[91] IMA ¶ 8.

[92] IMA ¶ 9.

[93] *See* Compl. ¶¶ 4, 12 (the English Worldwide Freezing Injunction against the Lakhanis); *id.* at ¶ 5 (Malaysia ship seizure); *see also* Buss Decl. at ¶ 5 (referencing collection actions currently pending before the Commercial Courts of London, England and Kuala Lumpur, Malaysia, as well as "other contemplated proceedings to be filed … before English courts"). The federal government, the Securities Exchange Commission and Federal Bureau of Investigation, are looking into YieldStreet's responsibilities for the loans. Dawn Lim, *Two U.S. Agencies Examining Investments Sold by Crowdfunding Site YieldStreet*, WSJ, Aug. 12, 2020, *available at* https://www.wsj.com/articles/two-u-s-agencies-examining-investments-sold-by-crowdfunding-site-yieldstreet-11597224600?st=fh4ltngkgzpzrdf&reflink=article_email_share (last accessed Sept. 16, 2021).

[94] *Tractebel*, 487 F.3d at 110 ("[D]amages … must be not merely speculative, possible, and

Plaintiffs' breach of contract claims should be dismissed.

### 2.  The Complaint fails to plausibly allege any tort claims.

Plaintiffs' tort allegations of aiding and abetting fraud, fraud, breach of fiduciary duty, negligent misrepresentation, negligence, and conversion also fail. Under well-established New York law, the basis of the parties' relationship rests in the contract and does not arise from any independent duty actionable in tort. Simply put – there is no such thing as negligent breach of contract: either a promise was fulfilled, or it was not. Plaintiffs' alleged tort claims cannot stand when the gravamen of the Complaint is breach of contract. In addition, Plaintiffs themselves allege a break in the chain of causation – the superseding event of North Star's fraud. YieldStreet's Complaint fails to plausibly plead the essential elements of aiding and abetting fraud, fraud, or conversion, and each tort claim also fails under New York's Economic Loss Doctrine.

### a.  Plaintiffs' claim for negligence is futile under New York contract law.

Plaintiffs' claim of negligence is defeated by the terms of the IMA. Pursuant to New York contract law, a contractual obligation cannot be negligently breached; either the contract terms were performed as required, or they were not.[95]

Similar to the baseless claims at issue in *BNP Paribas*, Plaintiffs' tort allegations merely restate their breach of contract claim.[96] Plaintiffs have failed to allege any acts or omissions by

---

imaginary, but they must be *reasonably certain* and such only as actually follow or may follow from the breach of the contract." (quotation omitted)); *see also* Isquith Decl. Ex 5 ("To date, no YieldStreet note has ever been in default; the YieldStreet SPVs have returned all principal on more than 135 offerings, including multiple offerings where, just like here, there was exposure to an underlying default.").

[95] *See BNP Paribas v. Bank of N.Y. Tr. Co., N.A.*, No. 11 Civ. 350 (PGG), 2012 WL 13059498, at *11-12 (S.D.N.Y. Mar. 28, 2012); *Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*, 30 N.Y. 3d 704, 711-13 (2018); *OP Solutions, Inc. v. Crowell & Moring, LLP*, 900 N.Y.S.2d 48, 49 (1st Dep't 2010) ("It is well-settled that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." (quotation omitted)).

[96] *Compare* Compl. ¶¶ 45, 127-128 (Defendants breach the IMA for failure to use reasonable care

Defendants outside the four corners of the IMA, and therefore the negligence claim must be dismissed.[97]

> **b.** **Plaintiffs' breach of fiduciary duty claim fails because Plaintiffs do not allege that any fiduciary duty existed between the Parties outside the terms of the IMA.**

Plaintiffs' claim for breach of fiduciary duty is undermined by their failure to allege a fiduciary relationship existed between the Parties.[98] There cannot be a failure to perform a fiduciary duty if no such relationship was established, which is particularly difficult to plead in respect of a commercial contract between sophisticated financial companies.[99]

All discretion over investment-related decisions under the IMA rested with YieldStreet; conversely, Four Wood had no ability or authority to act without YieldStreet's express approval.[100] Nor did YieldStreet place any particular reliance on Four Wood. YieldStreet told its investors that it had the necessary expertise to create and sell the securities derived from the value of the North Star loans. Four Wood merely served as an investment advisor and had no determinative authority.

---

or commercially reasonable skill and attention as set forth in contract), *with* Compl. ¶¶ 148-49 (Defendants allegedly owed extra-contractual duties to exercise reasonable care and breached such duties in same way as they allegedly breached the IMA).

[97] *BNP Paribas*, 2012 WL 13059498, at *12; *see also Mindspirit, LLC v. Evalueserve Ltd.*, No. 15 Civ. 6065 (PGG), 2016 WL 11707410, at *6 (S.D.N.Y. Sep. 26, 2016) ("Under New York law, claims based on negligent or grossly negligent performance of a contract are not cognizable. It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract …." (citation and quotations omitted)).

[98] *See* Compl. ¶¶ 135-140.

[99] *See Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

[100] *See, e.g.*, IMA p. 1 ("For the avoidance of doubt, the Investor's [YieldStreet] Account shall be a non-discretionary account in which [YieldStreet] shall retain all rights, title, control, and management final authority with respect to all investments in [YieldStreet's] Account.").

The breach of fiduciary duty claim only restates Plaintiffs' fatally-flawed breach of contract claims.[101] "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract …."[102] "Under New York law, 'a cause of action for breach of fiduciary duty that is merely duplicative of a breach of contract claim cannot stand.'"[103]

> c.      **Plaintiffs fail to state a claim for negligent misrepresentation.**

Plaintiffs have failed to plead, as they must under New York law, that: (i) a special relationship existed between the Parties (apart from what is set forth in the IMA); (ii) Defendants made a false representation that it knew or should have known was incorrect, as well as the specifics regarding who made the false statement, to whom, and when; (iii) Defendants knew the information supplied in the representation was to be relied upon by Plaintiffs; (iv) Plaintiffs intended to rely and did act upon the information; and (v) Plaintiffs reasonably relied on such false information to their detriment.[104] Not only did Plaintiffs fail to allege these elements, generally, they have failed to do so with the required particularity.[105]

---

[101] *Clark-Fitzpatrick*, 70 N.Y.2d at 389 (dismissing tort claims in a breach of contract action for failure to monitor assets); *Great Western Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *18 (S.D.N.Y. June 22, 2020) ("A cause of action for breach of fiduciary duty that duplicates a breach of contract claim must be dismissed."); *accord AMBAC Assur. Corp. v. U.S. Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 156 (S.D.N.Y. 2018).

[102] *Clark-Fitzpatrick*, 70 N.Y.2d at 389 (citations omitted).

[103] *Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 195-96 (S.D.N.Y. 2011) (quoting *Grund v. Delaware Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226, 249-250 (S.D.N.Y. 2011)).

[104] *See Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (setting forth the elements for a negligence misrepresentation claim).

[105] *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 339 n.30 (S.D.N.Y. 2007); *Arnold Chevrolet LLC v. Tribune Co.*, No. 04-CV-3097 (DRH)(WDW), 2007 WL 2743490, at *7 (S.D.N.Y. Sept. 17, 2007).

*First*, Plaintiffs fail to allege that a special relationship existed between the Parties outside of the IMA. "The New York Court of Appeals "takes a rather cautious approach to determining whether a relationship necessary to support a claim for negligent misrepresentation exists."[106] Plaintiffs never alleged any relationship existed between the Parties outside of four corners of the IMA. Since the relationship is governed by the IMA Plaintiffs cannot establish the special relationship necessary for a negligent misrepresentation claim.[107]

New York courts consider three elements to establish "special relationship" when there is a contract, as here: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'"[108] Plaintiffs have not adequately alleged with the requisite particularity that any of the indicia of a special relationship are present here.

As to the first element, Plaintiffs baldly assert a special relationship based on the Defendant's knowledge regarding the highly specialized and insular overseas market for vessel deconstruction lending. YieldStreet, however, claims to have this knowledge and makes its own investment decisions.[109] This Court has held that "knowledge of the particulars of the company's

---

[106] *Sykes v. RFD Third Ave. 1 Assoc., LLC*, 884 N.Y.S.2d 745, 747 (1st Dep't 2009) (citing *Ossining Union Free Sch. Dist. v. Anderson*, 73 N.Y.2d 417, 424 (1989) ("We have defined this duty [of care in misrepresentation cases] narrowly, more narrowly than other jurisdictions.")).

[107] *See, e.g.*, *Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, No. 03 Civ. 0015(RWS), 2006 WL 1997628, at *10 (S.D.N.Y. July 18, 2006) ("Unless a prior relationship existed between the defendant and plaintiff, the defendant is not liable for negligent misrepresentation."); *FSP, Inc. v. Societe Generale*, No. 02CV4786GBD, 2005 WL 475986, at *13 (S.D.N.Y. Feb. 28, 2005); *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 63-64 (2d Cir. 1988); *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 539 (S.D.N.Y. 2007); *Greenberg v. Chrust*, 198 F. Supp. 2d 578, 585-86 (S.D.N.Y. 2002).

[108] *Madison Capital Co., LLC v. Alasia, LLC*, 615 F. Supp. 2d 233, 240 (S.D.N.Y. 2009) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)).

[109] *See* Compl. ¶ 68 (YieldStreet "began to develop its own capabilities to originate maritime loan

39

business … does not constitute the type of 'specialized' knowledge' that is required in order to impose a duty of care in the commercial context."[110]

As to the second element, Plaintiffs do not attempt to plead facts of a "special relationship of trust or confidence." Quite the opposite, YieldStreet publicly claims to its investors that YieldStreet has the special knowledge to invest billions of dollars of investor's money and to select investments.[111] Plaintiffs attempt to bootstrap the alleged special expertise to the conclusory allegation that a relationship of trust or confidence existed.[112] However, all investment decisions under the IMA rested with YieldStreet, which retained complete control and discretion over the Parties' relationship.[113] Pursuant to the terms of the IMA, Four Wood could not direct, decide upon, or make any investment decisions for YieldStreet.[114] Courts in this district have rejected similar attempts to gloss over the second element of the special relationship test.[115]

---

transactions"); Schedule B-1s (evidencing Plaintiff YMF taking on "Manager" role and responsibilities so YieldStreet could enrich itself with additional management fees); *see also* "Vessel Refinancing II," Yieldstreet, available at https://www.yieldstreet.com/offering /J2S3aA/vessel-refinancing-ii- (last accessed Sept 17, 2021) (YieldStreet holding themselves out as having knowledge to be both lender and originator of a maritime investments).

[110] *See Gusmao v. GMT Group, Inc*., No. 06 Civ. 5113(GEL), 2008 WL 2980039, at *15 (S.D.N.Y. Aug. 1, 2008) (quoting *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 402 (S.D.N.Y. 2004)); *cf. Kottler*, 607 F. Supp. 2d at 466; *Gaidon v. Guardian Life Ins. Co. of Am*., 679 N.Y.S.2d 611, 612 (1st Dep't 1998).

[111] *See Kottler*, 607 F. Supp. 2d at 465-66 (a relationship as a financial advisor is not enough to establish a special relationship); *see also* Yieldstreet, available at https://www.yieldstreet.com/ (last accessed Sept 17, 2021) (over $1 Billion invested on their platform).

[112] *See* Compl. at ¶ 66.

[113] IMA at 1 ("For the avoidance of doubt, the Investor's [YieldStreet's] Account shall be a non-discretionary account in which [YieldStreet] shall retain all rights, title, control, and management final authority with respect to all investments in [YieldStreet]'s Account.").

[114] *See* IMA.

[115] *See, e.g.*, *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ 318(RJS), 2009 WL 2242605, at *32-34 (S.D.N.Y. July 27, 2009) (dismissing negligent misrepresentation claim where special expertise was alleged but not the other two prongs of the special relationship test); *Kottler*, 607 F. Supp. 2d at 466.

Plaintiffs also fail to allege any false representation made by Defendants that it knew or should have known was incorrect, let alone with the requisite particularity.[116] Because negligent misrepresentation is tantamount to fraud, particularity of pleading is required as it is for all fraud-related pleadings under Fed. R. Civ. P. 9(b).[117] Contrary to this heightened standard of pleading, the Complaint is devoid of such particularity and cannot be corrected. Plaintiffs have not alleged a single statement which contain a misrepresentation by the Defendants. For the veiled statements that Plaintiffs claim to have relied upon, they knew that reliance on the "accurate information regarding the North Star Borrowers" was a risk they themselves had to bear and that the Defendants had no responsibility for those third party statements. *Compare* Compl. ¶ 143, *with* IMA ¶ 11.

This Court should dismiss Plaintiffs' claim for negligent misrepresentation.

### d. Plaintiffs do not, and cannot, allege proximate causation of damages.

Even if the Court determines that the Plaintiffs have properly alleged the requisite duty and subsequent breach of that duty required for each of the Plaintiffs' tort claims, those claims still fail because none of the Plaintiffs' losses are directly and proximately caused by Defendants.[118] As Plaintiffs have made clear, both here and in the related proceeding, the immediate and effective cause of Plaintiffs' alleged injuries is/was and always shall be North Star's fraudulent acts.[119] Thus,

---

[116] *See DeBlasio*, 2009 WL 224605, at *32 ("Negligent misrepresentation involves most of the same elements as fraud, with a negligence standard substituted for the scienter requirement." (quotation omitted)).

[117] *Parmalat*, 479 F. Supp. 2d at 339 n.30; *Arnold Chevrolet*, 2007 WL 2743490, at *7; *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 495 (S.D.N.Y. 2006) ("Negligent misrepresentation claims must be pleaded with particularity pursuant to Rule 9(b)." (citing *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 373, 389 (S.D.N.Y. 2003))).

[118] *See, e.g.*, *Adamski v. Lama*, 869 N.Y.S.2d 256, 257 (3d Dep't 2008) (negligence); *Laub v. Faessel*, 745 N.Y.S.2d 534, 536-37 (1st Dep't 2002) (negligent misrepresentation); *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 173 F. 454, 465-66 (2d Cir. 1999) (breach of fiduciary duty).

[119] Buss Decl. ¶¶ 30-36.

North Star's allegedly criminal acts are the "superseding and intervening events breaking [any alleged] chain of causation" between the purported misconduct by Four Wood and YieldStreet's speculative (and unrealized) losses.[120]

The Second Circuit has held that a defendant cannot be liable for failing to prevent a third party's criminal acts unless those acts were "normal and foreseeable consequence" of the defendant's own actions.[121] "An intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant."[122] One would be hard-pressed to conceive of a more "extraordinary" superseding event than North Star's fraud as described in the findings of fact by the English Court and as described by YieldStreet's own lawyer, Buss, both to this Court and the English Court. *See generally* Isquith Decl. Ex. 4.

Plaintiffs have not attempted to allege that North Star's massive fraud was a "normal and foreseeable consequence" of the alleged failures to follow the contract nor could they plausibly do so. This is a fatal defect in the Complaint that cannot be overcome by amendment.

### e.   The Economic Loss Doctrine bars Plaintiffs' tort claims.

Plaintiffs' tort claims are also precluded by the economic loss doctrine. "New York retains [the economic loss doctrine] in order to preserve the distinction between tort and contract, in an attempt to keep contract law from drown[ing] in a sea of tort. Therefore, [i]f the damages suffered

---

[120] *See Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 319 (3d Cir. 1999) (applying New York law).

[121] *Caraballo v. United States*, 830 F.2d 19, 22 (2d Cir. 1987).

[122] *Gray v. Denny's Corp.*, 535 Fed. Appx. 14, 15 (2d Cir. 2013) (quotation omitted).

are of the type remediable in contract," as they clearly are in this instance, "a plaintiff may not recover in tort."[123]

Furthermore, under "longstanding" New York legal doctrine, "economic loss is not recoverable under a theory of negligence."[124] Courts in this district have consistently held that the economic loss doctrine also bars negligent misrepresentation claims where, as here, the plaintiff has suffered only economic loss.[125] As discussed above, it is not even clear at this stage whether Plaintiffs have suffered *any* economic loss, as they continue to engage in extensive efforts to recover their investment from North Star in multiple jurisdictions globally.[126]

### f.  Plaintiffs' fraud-based claims are implausible, not plead with sufficient particularity, and are inextricably linked with breach of contract claim.

Plaintiffs' fraud-related claims are implausible, pled with insufficient particularity, and are so inextricably linked with the breach of contract claim as to be independently non-actionable.

In an attempt to state an "aiding and abetting fraud" claim, Plaintiffs allege that Defendants passed on certain information and communications from North Star to YieldStreet (as they were required to do under the IMA), but other than alleging that the underlying information North Star provided to Defendants was false, Plaintiffs fail to allege how the provision of such notice constitutes aiding and abetting or direct fraud.[127] Indeed they make no attempt whatsoever to

---

[123] *PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, No. 99 Civ. 3794(BSJ), 2003 WL 22118977, at *27 (S.D.N.Y. Sept. 11, 2003) (citations and quotations omitted).

[124] *Robin Bay Assocs., LLC v. Merrill Lynch & Co.*, No. 07 Civ. 376(JMB), 2008 WL 2275902, at *5 (S.D.N.Y. June 3, 2008) (quotation omitted).

[125] *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609-10 (S.D.N.Y. 2009); *GMA Accessories, Inc. v. ePartners Inc.*, No. 07 Civ. 8414(LAK), 2008 WL 781188, at *1 (S.D.N.Y. Mar. 19, 2008); *PPI Enters.*, 2003 WL 22118977, at *27.

[126] *See* Compl. ¶ 4; *see also supra* Section IV.D.1.b (discussing speculative and premature nature of the damages).

[127] *Compare* Compl. ¶¶ 117-118 (Plaintiffs' allegations of Defendants forwarding North Star MOAs, truthful reporting of information regarding vessel locations received from North Star or

allege, let alone with particularity, whether defendants knew the information was false or intended to engage in fraud themselves. The Complaint is nonsense. Plaintiffs' contention that Defendants' fulfillment of its contractual obligations as manager by passing on information that North Star provided constituted aiding and abetting fraud is simply implausible and irrational – Defendants did what Plaintiffs asked them to do under the IMA and acknowledge the Plaintiffs were in direct contract with NorthStar.

"Under New York law, a cause of action sounding in fraud cannot be maintained when the only fraud charged relates to a breach of contract."[128] Plaintiffs' allegations that Defendants engaged in aiding and abetting fraud are no more than repackaging of their similarly implausible contentions that Defendants breached duties owed pursuant to the IMA contract, and such restatements of a breach of contract claim as fraud are not independently actionable.[129]

---

third-party tracking services and reporting of North Star's explanations for late payments), *with* IMA ¶ 11 (IMA obligation of manager to "provide Investor with … any other material notices, reporting or documents **received by Manager in connection with the loans**" (emphasis added)).

[128] *Ellington*, 837 F. Supp. 2d at 197 (citing *W.B. David & Co., Inc. v. DWA Commc'ns, Inc.*, No. 02 Civ. 8479 (BSJ), 2004 WL 369147, at *3 (S.D.N.Y. Feb. 26, 2004) (noting that courts applying New York law do not "recognize claims that are essentially contract claims masquerading as claims of fraud" (quotation omitted)); *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996) (dismissing a fraud claim insufficiently distinct from the breach of contract claim, which "merely append[ed] allegations about [defendant's] state of mind to the claim for breach of contract")).

[129] *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("As a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract. Thus, general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim." (quotations omitted)); *FPP, LLC v. Xaxis US, LLC*, 764 Fed. Appx. 92, 94 (2d Cir. 2019) (summary order) ("A fraud claim is tenable only when the fraud alleged is collateral or extraneous to the contract." (quotation omitted)); *Spinelli v. Nat'l Football League*, 903 F.3d 185, 209 (2d Cir. 2018); *NRW, Inc. v. Bindra*, 775 Fed. Appx. 22, 24 (2d Cir. 2019) (summary order) ("[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." (quotation omitted)).

In an even more misguided attempt to assert a direct fraud claim (Count III of the Complaint), Plaintiffs generally allege that "Defendants made material misrepresentations and omissions in the course of their purported performance under the Agreement and feigned performance under the Agreement," without specifying in *any* detail who, what, where, or how anything Defendants allegedly did (as opposed to things North Star allegedly did) were fraudulent. Failing there, Plaintiffs also do not (and cannot) allege how, why, when or where Defendants' actions caused their losses.[130] Such generalized pleading fails to meet the particularity standard applicable to claims of fraud under Rule 9(b). Their failure to make specific allegations to which Defendants may respond is an independent ground for dismissal of Plaintiffs' fraud claim.[131]

During the period at issue, YieldStreet, by contract, was managing the relationship with North Star, tracking the collateral, and charging its investors for these services. YieldStreet, **in no way,** was relying on Four Wood. Further, Plaintiffs – an extremely sophisticated party that had by

---

[130] *See*, *e.g.*, *FDIC v. Murex LLC*, 500 F. Supp. 3d 76, 118-19 (S.D.N.Y. 2020) ("To establish a claim for fraud in New York, 'the plaintiff must show that the loss was a direct result of the defendant's wrongful actions and [that it was] independent of other causes.' *Bennett v. U.S. Tr. Co. of N.Y.*, 770 F.2d 308, 316 (2d Cir. 1985). 'The absence of adequate causation is … fatal to a common law fraud claim under New York law.' *Id.*; *see Basis PAC-Rim Opportunity Fund (Master) v. TCW Asset Mgmt. Co.*, 149 A.D.3d 146, 149 (1st Dep't 2017) ("To establish loss causation a plaintiff must prove that 'the subject of the fraudulent statement or omission was the cause of the actual loss suffered.'" (quoting *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005))). '[A]nd a plaintiff's claim fails when 'it has not … proven … that its loss was caused by the alleged misstatements as opposed to intervening events.'" *Basis PAC-Rim*, 149 A.D.3d at 149 (alterations in original) (quoting *Lentell*, 396 F.3d at 174); *see Laub v. Faessel*, 297 A.D.2d 28, 31, 745 N.Y.S.2d 534 (1st Dep't 2002) (affirming grant of summary judgment to defendant where plaintiff produced no "evidence that those misrepresentations directly and proximately caused his investment losses" and collecting cases).").

[131] *See* Compl. ¶ 31; *see also Salameno v. Rawlings*, 19 Civ. 4442 (PGG) (BCM), 2021 WL 1085521, at *43 (S.D.N.Y. Mar. 22, 2021) ("Because Rule 9(b) imposes a heightened pleading standard on fraud claims, the plaintiff must specify the fraudulent statements, identify the speaker … state where and when the statements were made, and … explain why the statements were fraudulent." (citing *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 856 F.3d 71, 81 (2d Cir. 2017))).

2019 allegedly "began to develop its own capabilities to originate maritime-loan transactions"[132] – fail to explain how they justifiably and reasonably relied on Defendants' accurate reporting of North Star's communications to suffer any harm beyond the risk of loan failure Plaintiff explicitly agreed to assume in the IMA. Nowhere in the Complaint does YieldStreet state that Four Wood vouched for the accuracy of North Star's false statements.

Furthermore, any damages arising from the purported fraud are identical to those they attempt to recover for breach of contract under the IMA.[133] For all of the foregoing reasons, Plaintiffs' fraud-related claims must be dismissed.

### g.   Plaintiffs fail to state a claim for conversion.

"Under New York law, [i]n order to establish a cause of action to recover damages for conversion, the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights."[134] "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's right."[135]

---

[132] *See* Compl. ¶ 68.

[133] *See Ithaca Capital Investments I S.A. v. Trump Pan. Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 369-70 (S.D.N.Y. 2020) ("In addition, even where a fraud claim is sufficiently pled, '[u]nder New York law, no fraud claim is cognizable if the facts underlying the fraud relate to the breach of contract.' 'Under New York law, a fraud-based claim must be sufficiently distinct from [a] breach of contract.' The Second Circuit has instructed that where fraud claims are brought alongside contract claims, the fraud claims may only proceed where they will '(i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.'" (citation omitted)).

[134] *Coughlan v. Jachney*, 473 F. Supp. 3d 166, 199-200 (E.D.N.Y. 2020) (quotation omitted).

[135] *Coughlan*, 473 F. Supp. 3d at 200 (quoting *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012); citing *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006)).

"Interference with a right of possession is the essence of a conversion,"[136] and "[t]angible personal property or *specific money* must be involved."[137]

YieldStreet have not and cannot establish any of the elements of a conversion claim. Here, the "thing" at issue is the fees paid by Yieldstreet to Four Wood for the performance of its duties under the IMA. Four Wood never had any control or dominion over funds in the bank accounts of Yieldstreet: it was Yieldstreet that released those funds. The money paid to Four Wood, by YieldStreet from YieldStreet's own account, is not "specific money" capable of conversion. If anything, this is just a dispute of fees earned. Plaintiffs' conversion claim must be dismissed.

### 3. The Complaint fails to plausibly allege claims against Baffico and Simmons in their individual and personal capacities.

Plaintiffs' use of the adverb "personally" in the Complaint does not subject Baffico and Simmons to personal liability: it is clear from the pleadings themselves that all allegedly wrongful acts ascribed to Baffico and Simmons were in their official roles as officers of either Four Wood for Baffico or MFA or MMA for Simmons, and not in their personal capacities. Baffico, in his role as Managing Partner of FWCA and the Chief Executive Officer of FWCP, is not subject to personal liability because he signed a contract on behalf of the companies or sent out past due invoices for Four Wood's work done. YieldStreet fails to allege Baffico did anything other than through and for the Four Wood defendants.[138] Simmons is neither an employee nor officer of Four Wood. It is settled law that a corporate officer cannot be held liable for a breach of contract, or other torts while acting in his official capacity.[139]

---

[136] *Meese v. Miller*, 79 A.D.2d 237, 242 (4th Dep't 1981).

[137] *Nat'l Ctr. for Crisis Mgmt. v. Lerner*, 91 A.D.3d 920, 921 (2d Dep't 2012).

[138] Compl. ¶¶ 39, 108.

[139] *See, e.g.*, *Value Time, Inc. v. Windsor Toys, Inc.*, 709 F. Supp. 436, 438 (S.D.N.Y. 1989) (holding that a corporate officer could not be held liable for the corporation's alleged breach of contract where he was acting in his official capacity as an officer); *Maranga v. McDonald & T.*

Moreover, Plaintiffs fail to plead plausible facts sufficient to justify the extraordinary remedy of piercing of the corporate veil as an alternative means of subjecting Baffico and Simmons to potential liability in their personal capacity.[140] As to Four Wood and Baffico, it is a foundation of New York Corporation Law that "[a] member of a limited liability company 'cannot be held liable for the company's obligations by virtue of his [or her] status as a member thereof.'"[141] Further, under New York law, "[a]s a rule, the corporate form is accorded great respect and is set aside only when necessary to avoid a manifestly inequitable result."[142] In New York a party seeking to pierce a corporate veil must allege "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."[143] In analyzing whether an individual exercised "domination" over a corporation, New York courts have considered: (1) whether corporate formalities are observed, (2) whether the corporation is

---

*Corp.*, 8 A.D.3d 351, 352 (2d Dep't. 2004) ("Where a principal of a corporation expressly signs a contract in his or her capacity as an officer of the corporation, unless he or she purports to personally bind him or herself, he or she will not be held personally liable under the contract."); *Ball v. New York City Council*, No. 17-cv-4828 (JMF), 2018 WL 4625625, at *5 (S.D.N.Y. Sept. 26, 2018) (corporate veil could not be pierced where there are no allegations that a principal intended to be personally bound by an agreement); *Trisvan v. Heyman*, 305 F. Supp. 3d 381, 407 (E.D.N.Y. 2018) (finding that the corporate veil should only be pierced if there are allegations that the corporate officer had direct "participat[ion] in the commission of a tort" (quoting *FLB, LLC v. Cellco P'ship*, 536 Fed. Appx. 132 (2d Cir. 2013))).

[140] *See Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1365 (Fed. Cir. 2013) (affirming dismissal of claim against corporate representative pursuant to veil-piercing principles of New York law); *Automated Transaction LLC v. N.Y. Cmty. Bank*, No. 12-CV-3070(JS)(ARL), 2013 WL 992423, at *4, 4 n.6 (E.D.N.Y. Mar. 13, 2013) (dismissing allegation against group of affiliated defendants without alleging facts to support veil-piercing).

[141] *See De Sole v. Knoedler Gallary, LLC*, 974 F. Supp. 2d 274, 304 n.12 (S.D.N.Y. 2013) (Gardephe) (citations omitted).

[142] *Koninklijke Philips Elecs. N.V. v. ADS Group*, 694 F. Supp. 2d 246, 251 (S.D.N.Y. 2010).

[143] *Koninklijke*, 694 F. Supp. 2d at 251 (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)).

adequately capitalized, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) whether there is an overlap in ownership, officers, directors, and personnel, (5) whether the corporate entities share common office space, address and telephone numbers, (6) the amount of business discretion displayed by the allegedly dominated corporation,(7) whether the alleged dominator deals with the dominated corporation at arm's length, (8) whether the corporation is treated as an independent profit center, (9) whether others pay or guarantee debts of the corporation, and (10) whether the corporation had property that was used by the alleged dominator as if it were his own.[144]

Additionally, "[p]roving these elements has been characterized as a 'heavy burden.'"[145] The party attempting piercing "must come forward with factual allegations as to both elements of the veil-piercing claim," and here, Plaintiffs allege no more factually than that Baffico and Simmons fulfilled the contractual responsibilities of Four Wood.[146] Plaintiffs have not adequately pleaded facts that would justify, or justify the extraordinary remedy, of piercing the corporate veil. Indeed, the Complaint is completely void of any specific or significant details which demonstrate that those conditions.

All the Plaintiffs allegations regarding the role of the executives with the corporations or the legitimacy of the corporations o are conclusory and fail to touch on any of the aspects necessary to demonstrate that the corporations were mere shells. Management roles are just not enough.[147]

---

[144] *Koninklijke*, 694 F. Supp. 2d at 251-52.

[145] *See Bell v. Carey*, No. 18-CV-2846 (PAE) (OTW), 2020 WL 3578150, *3 (S.D.N.Y. July 1, 2020) (citations omitted).

[146] *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005).

[147] *See Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 578 (S.D.N.Y. 2013) ("the mere fact that an individual is the sole member, shareholder, or a controlling person in an entity does not, by itself, justify piercing the corporate veil"); *see also Nelson v. Adams USA, Inc.*, 529 U.S. 460, 471 (2000) ("One-person corporations are authorized by law and should not lightly be labeled sham[s].").

The claims against Baffico should be dismissed.

## V.   <u>**CONCLUSION**</u>

For all of the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice.


Date: September 17, 2021                    Respectfully submitted,

                                             /s/ Fred T. Isquith Sr.
                                            Fred T. Isquith Sr.
                                            Fred T. Isquith Jr.
                                            **ISQUITH LAW PLLC**
                                            222 E. 80th Street
                                            New York, New York 10075
                                            Tel.: (718) 775-6478
                                            Isquithlaw@gmail.com

                                            *Counsel for Defendants Four Wood Capital*
                                            *Advisors, LLC, Four Wood Capital Partners, LLC,*
                                            *and Steven Baffico*


                                             /s/ Brian S. Fraser
                                            Brian S. Fraser
                                            **AKERMAN LLP**
                                            1251 Avenue of the Americas, 37th Floor
                                            New York, NY 10020
                                            Tel.: (212) 880-3800
                                            Fax: (212) 880 8965
                                            brian.fraser@akerman.com

                                            *Counsel for Defendant Andrew Simmons*